RAILROAD *v.* BINGHAM.

(*Jackson.*    May 7, 1889.)

1. BOUNDARY.    *Call for side of street.*

Deed does not carry title to center of street, where it calls specifically for *side* of street.

Case cited and approved : Spain's case, Thompson's Tenn. Cases, p. —.

2. MUNICIPAL CORPORATIONS.    *Powers.    Authorizing use of streets for railroad purposes.*

Municipal corporations, empowered by their charters or otherwise to do so, may authorize the use of their public streets for railroad purposes.

Cases cited and approved : Railroad *v.* Adams, 3 Head, 598; Railroad *v.* Memphis, 4 Cold., 414.

3. SAME.    *Same.    Grading streets.    Liability to abutting owners.*

Municipal corporations have power to grade, macadamize, or otherwise improve their public streets; and they incur no liability to abutting lot owners where, in the lawful and prudent exercise of this power, the abutting lots are rendered less valuable by reason of being left above or depressed below the common level.

Cases cited and approved : Humes *v.* Knoxville, 1 Hum., 408; Crawford *v.* Maxwell, 3 Hum., 477; Memphis *v.* Lasser, 9 Hum., 760; Nashville *v.* Brown, 9 Heis., 6.

Cited and distinguished : Gray *v.* Knoxville, 85 Tenn., 99; Pumpelly *v.* Greenbay, 13 Wall., —.

4. RAILROADS.    *Grading and occupying streets under contract with city. Liability to abutting owners.*

Railroad company grading and improving street under contract with city, upon consideration of being permitted to construct its road thereon, is liable to owners of adjoining lots, *who do not own the fee in the street,* for such injury only, resulting from such grading and improvement of the street and construction of road, as the city would have been liable for if it had done the work itself.

*Aliter.*    Where railroad is constructed on street in which abutting owners hold the fee.

5. SAME.    *Lawful use of street.    Abutting owners.    Egress and ingress.*

Abutting lot owners, *who do not own the fee in the street,* cannot recover for injuries resulting to them from the lawful and reasonable use of

Railroad *v.* Bingham.

a public street by a railway company, under the permission of the city, where their right of egress and ingress is left reasonably sufficient.

Cases cited and approved: Railroad *v.* Adams, 3 Head., 596; 38 Mich., 62; 10 Bush., 382; 73 Penn. St., 29; 21 Ill., 516; 79 Ill., 269; 33 Mo., 128; 35 Cal., 325; 12 Iowa, 246; 25 Vt., 67.

6. SAME. *Case in judgment.*

In street 44 feet in width, excluding sidewalks, railroad company laid two tracks—the outer rails of which were 12½ feet from curbing on either side. The iron rails were level with the surface of the street. On either side of the tracks there was sufficient space for passage of ordinary vehicles. About fourteen regular trains passed over these tracks every twenty-four hours. The street was entirely free from obstruction for greater portion of the time. This occupation and use of the street was authorized and lawful.

*Held:* That these facts do not constitute a taking, or material obstruction, of the easement of egress and ingress to which abutting lot owners are entitled in the street.

7. SAME. *Use of street in unlawful manner. Abutting owners.*

Abutting lot owners, *who do not own the fee in the street,* may recover of railroad company, operating its road by permission upon a public street, such damages as result to them from an unlawful and improper use of the street by the company.

8. SAME. *What is unlawful use of street.*

Under permission to operate its road upon a public street, a railroad company is not allowed to use the street for ordinary switching purposes, or to run its trains at illegal and dangerous speed, or to leave its trains standing unreasonably, or to park its cars thereon, or to suffer its engines to throw cinders, soot, and smoke unnecessarily upon adjoining premises. Such acts constitute a nuisance.

9. SAME. *Measure of damages for unlawful use of street.*

(As to measure of damages for such injuries see Harmon *v.* Railroad, *post.* p. 614.)

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

MORGAN & McFARLAND for Railroad.

TURLEY & WRIGHT for Bingham.

LURTON, J. Mrs. Bingham is the owner of a block of lots fronting on Sixth Street, Memphis, upon one end of which she has erected four frame dwelling-houses. At the time she sustained the damage, for which she sues, she was in receipt of a monthly rental of forty dollars from these houses. After her property had been thus improved, Sixth Street, including that part in front of her tenements, was occupied by the Iron Mountain Railroad Company, by the construction thereon of two railway tracks, over which it passes its trains in reaching its depot in the city.

This suit was brought by her to recover damages sustained by her property in consequence of this use of the street by the railroad company. Her grounds of action are elaborately stated in her declaration, but for convenience in treatment of the many important questions presented, we will classify them under four distinct heads:

*First.*—Damages consequent upon the lawful and necessary use of a public street for railroad purposes.

*Second.*—Damages consequent from the grading of the street by the railroad company.

*Third.*—Damages by obstruction of her right of ingress and egress by lawful occupation and user of street by railway company.

*Fourth.*—Damages resulting from excessive and unnecessary and unlawful use of the street in front of her premises and amounting to a nuisance.

A jury being waived, the cause was determined by the Circuit Judge, whose special findings of law and fact are in the transcript, and judgment was rendered for plaintiff below for the sum of two thousand dollars. His Honor, the trial judge, found no special damages under the fourth classification, but did find that the depreciation in the value of Mrs. Bingham's property, by reason of the construction and operation of a railroad upon the street in front of her premises, was the sum of two thousand dollars. What part of this sum he found to be the consequence of the mere use of the street by the railway company, or of the grading of the street, or of obstruction to her easement in the street, we are left to conjecture, for his Honor has failed to make any separate findings of law or fact as to either of these matters, though requested so to do.

The deed under which Mrs. Bingham holds her property calls for the side of Sixth Street. The general rule undoubtedly is that a deed which merely calls for a highway or street carries title to the center thereof. This rule is in analogy to the doctrine that a grant calling for a stream not navigable carries title to the middle or thread of the stream. But where, from the language of the grant, it appears that the bank of the stream is intended to be the boundary, the title will be con-

fined within the intended limits.. · So if, from the terms used, it appears that the intent was to convey only to the street, such intent will be given effect. Such a conveyance as the one under which Mrs. Bingham holds, calling for the side of· the street, has been frequently construed as not carrying the fee to the center of the street or highway. Spain's case, Thompson's Tennessee cases; Washburn Real Estate, side page 635 and note; 2 Smith's Leading Cases, side page 216.

Where the public have but a servitude in the street, the fee being in the abutter, the occupation of the street by the tracks of an ordinary steam railway seems, by the decided weight of authority, to be regarded as a new and distinct servitude imposed upon the fee, and if done without the consent of the owner, is a taking of his property for public uses within the constitutional provision requiring compensation. Am. & Eng. Ency. of L., Vol. 6, p. 552, and cases cited.

A correct interpretation of the deed, under which Mrs. Bingham holds her property, must confine her to the side of the street, and excludes the fee of the highway altogether. No part of her freehold having been taken or occupied by the railroad company, her damages must be limited to such injuries as she can show herself, to have sustained as the owner of a mere easement in the street in front of her premises. What injury has she sustained, by reason of the use made of this street, for which she is entitled to recover damages? The

railroad is not a trespasser upon this street. The tracks now upon the street are there under license and authority from the city government. "The right of the legislative power," says Judge Wright, in the case of the *Tennessee and Alabama Railroad Company* v. *Adams*, "to authorize the building of a railroad within a town or city, or upon a street or other public highway, is not now to be doubted." 3 Head, 598; 4 Cold., 414.

The power of the Legislature to delegate to the municipal governments the right to license the use of a public street for railway purposes can no more be questioned than the first proposition. Dillon Mun. Corp., Secs. 519, 558 to 560 inclusive.

The authority conferred by the law creating the peculiar local government of the city of Memphis is abundant to sustain the contract between the city and the plaintiff in error. The railroad company, in so far as its occupation and use of this street is permitted by its contract and the taxing district ordinances, is not a trespasser. What the law expressly authorizes is not unlawful, and can not be regarded as a nuisance. The running of railroad trains along a public street devoted to residential purposes, and without any actual obstruction of the right of an abutting owner to light or air, or ingress and egress to and from his premises, may in most cases be regarded as injurious to the property of lot owners. A resident upon such a street will undoubtedly be subjected to more or less discomfort and inconvenience by

the mere passage of trains in front of his premises. Unpleasant odors and disagreeable noises at inconvenient hours are likely to be experienced. Life will not be altogether so comfortable. But does the law give damages for such consequential injuries? To entitle a plaintiff to recover damages there must not only be an injury, but the injury must be the result of some wrongful conduct. Where an injury results merely from the lawful and reasonable use of a neighboring estate, no wrong is done and no remedy exists. By the obstruction of a view, or of light, or of air, or by the erection of an unsightly structure, or the conduct of a lawful business, injury may be inflicted upon an adjoining property, but as remarked by counsel, "in these and like cases there is an implied agreement by every one who is a member of civilized society, that he will submit to such consequential injuries without action." The streets of a town or city are the property of the public, and the public, acting through their authorized agencies, may apply them to any public purpose not destructive of their use as public thoroughfares.

The sound and well-settled rule is therefore that no action will lie by an abutting lot owner, who does not own the fee in the street, for injuries which merely result from the legal and reasonable use of a public street by a railway company, and which leaves his right of egress and ingress reasonably sufficient. *Tennessee & Alabama Railroad Company* v. *Adams*, 3 Head, 596; *Grand Rapids & Indiana*

*Railroad Company* v. *Heisel*, 38 Mich., 62; *Railroad Company* v. *Coombes*, 10 Bush, 382; *Danville Railroad Company* v. *Commonwealth*, 73 Penn. St., 29; *Moses* v. *Pittsburg Railroad Company*, 21 Ill., 516; *Chicago Railroad Company* v. *McGinnis*, 79 Ill., 269; *Porter* v. *North Missouri Railroad Company*, 33 Mo., 128; *Carson* v. *Central Railroad Company*, 35 Cal., 325; *Millburn* v. *Cedar Rapids Railroad Company*, 12 Iowa, 246; *Hatch* v. *Central Vermont Railroad Company*, 25 Vt., 67.

The text writers with one accord seem to regard this a settled question. Pierce on Railroads, 234; Wood on Railroads, Vol. 2, 727; Dillon Mun. Corp., Sec. 556; Cooley Const. Lim., Sec. 555; Rorer on Railroads, Secs. 515, 518; Am. & Eng. Ency. of L., Vol. 6, p. 553, and cases cited.

The next element of damages to be considered is that resulting from the grading of the streets, whereby the property of plaintiff in error has been left from two to five feet above the level of the street. The contract between the city and the railroad company required the latter to grade and pave Sixth Street, and to put down curbing and sidewalks. The company was required to do this work in consideration for its use of the street, and to do it contemporaneously with the laying of the track. The grade was to be furnished by its city engineer, and the iron rails were to be laid flush with the street as graded. This grading and paving was done under the supervision of the city's own engineer, and the work is admitted to be in strict

accord with the requirements of the contract, and to have required an expenditure of about $30,000. Sixth Street was but an old country road, never having been in any way improved or graded. The most substantial injury shown by the evidence, aside from the injuries purely the consequences of the lawful use of the street for railroad purposes, sustained by Mrs. Bingham, have resulted from the grading of the street in front of her premises. The right of a town or city to establish a grade for the public streets, and to cut down or fill up the streets to conform to such grade, is one of the most useful and important functions imposed upon such municipalities.

To quote from the decision of this Court in *Humes* v. *Knoxville*: "The corporation is the proprietor of the public streets of the town which are held in trust as easements for the convenience of the citizens. As such proprietor the corporation has the power to grade, macadamize, or do any thing else for the improvement of the streets, whereby they may be made to answer the end for which they were designated; and if, in the exercise of this power, the property of any individual shall be rendered less valuable, either by being above or depressed below the common level, it is *damnum absque injuria*, a casualty to which his property is necessarily subject, and for which the corporation is not responsible unless the injury has been inflicted either wantonly or from neglecting to use reasonable dilligence." 1 Hum., 408.

This case is in accord with the line of decisions in other States, and has been more than once approved by this Court. *Crawford* v. *Maxwell*, 3 Hum., 477; *Memphis* v. *Lasser*, 9 Hum., 760; *Nashville* v. *Brown*, 9 Heis., 6.

The provisions of the Code, contained in Secs. 1392, 1393, and 1394, are probably applicable alone to corporations created under the chapter in which they are found, but even if of general application, they do not abrogate the rule as quoted, and do not affect any question in this case, no grade having ever been before established for this street, and there being no proof that Mrs. Bingham, before building, had applied to have a grade fixed.

The case of *Gray* v. *Knoxville*, reported in 85 Tenn., 99, has been pressed upon us by the learned counsel for defendant in error as in conflict with the former decisions of this Court.

Chief Justice Turney, who delivered the opinion of the Court in that case, in replying to the position assumed by the city, said: "If it was necessary for its public use that Asylum Street should be so graded for its drainage as to throw surface water on the property of plaintiff, thereby injuring his cellars, walls, shrubbery, etc., and in the work of grading the fences were knocked or tore down, it would be a taking and application to public uses to that extent." 85 Tenn., 101.

The decision, limited to the case thus assumed, is in no way inconsistent with our former adjudi-

cations, and is in accord with the leading case of *Pumpelly* v. *Greenbay*, 13 Wall.

In the case now being decided, the grading of Sixth Street having been done for the city, and under its authority, the railroad company is not liable, unless the city would be.

But it is insisted that the grade furnished the company by the city engineer had not been adopted by any official act of the legislative council of the city, and that, therefore, it is not a lawful grade, and that, therefore, the city and the company are jointly liable for all consequential damages.

The declaration does not charge this grading to have been done illegally, or without municipal authority, and there is no proof whatever as to whether the grade established by the city engineer had been adopted by the municipal council.

In this state of the record, and in view of the fact that the grading was done under a contract signed by all the members composing the legislative council, we will not assume that the grade furnished the company by the city engineer had not been officially adopted in whatever mode was necessary to make it an official act.

We therefore conclude that Mrs. Bingham is not entitled to any damages on account of the grading of this street, there being no pretense that it was done in an improper or negligent manner.

The next contention is, that if it be conceded that the railway company has the legal right to maintain its tracks upon this street, and that it

has been lawfully using these tracks for its usual and necessary business, that nevertheless this lawful use has so obstructed the right of ingress and egress as to amount to a destruction of her easement in the street. Excluding the sidewalks, the width of the street between curbing is forty-four feet. The tracks are two in number, and are in the center of the street. The space between each outer rail and the curbing is twelve and one-half feet. The iron rails are so laid as to be flush with the level of the street, and are therefore little obstruction to the ordinary use of the street. The clear space on either side of the tracks is wide enough for an ordinary vehicle when the tracks are in use by the company. About fourteen regular trains use these tracks each twenty-four hours. Thus the whole street is practically free and un-obstructed for much the greater part of the time. The proof abundantly shows that since the tracks have been laid and the street paved, that its use for ordinary traffic has greatly increased in spite of the dangers and inconveniences incident to the movement of trains. That the street may not be so safe or agreeable for driving as without the rail-road tracks is not to be disputed. But that the mere right of egress and ingress, which is appurtenant to every abutting owner on this street, has been destroyed or materially obstructed, is not proven by the facts of this case. The lawful and prudent use of the privileges conferred by the city upon this street to the railway company

is not such as to amount in any sense to a taking of her right of easement in the public street, or to a substantial destruction of her rights therein. Not owning the fee in the street, she has no right of complaint so long as her right of egress and ingress is reasonably sufficient, where the occupation of the street by the railway company is lawful.

We come now to consider the allegations in the declaration which charge an unlawful and improper use of the privileges accorded the railway company under its contract with the city. The acts charged are: that the street is used for ordinary switching purposes; that trains are run at a dangerous and illegal speed; that trains are unreasonably left standing upon the street, thus obstructing it, and that cars are parked upon the street, and engines suffered to make great and unnecessary noises; and that smoke, soot, cinders, and steam are unnecessarily thrown upon her premises, by all of which illegal and unlawful conduct the operation of the road has become a nuisance, and greatly lessened the rental values of her property.

These things, if proven, would constitute a nuisance, and entitle defendant in error to recover such damage as she may have sustained up to the bringing of her suit. When a railroad company has obtained legal authority to put its tracks upon a public street, it must so use its privileges as to do the least possible injury to abutting property owners, and to the general public, who have an

equal right upon the street. It must scrupulously avoid any violation of the contract under which its presence is permitted. The use of a street as a switch yard would not be authorized by an authority to lay down and operate a track for ordinary railway purposes. So the unreasonable stoppage of trains on a street, or the parking of its cars on the street, and any unnecessary noise or smoke, would be acts in excess of the use accorded, and therefore illegal and a nuisance.

Mr. Wood, in his work upon railroads, lays down what we regard as the sound and reasonable rule in the following words: "It may be stated as a general rule, that whatever is authorized by statute within the scope of legislative powers is lawful, and, therefore, cannot be a nuisance. But this must be understood as subject to the qualification that where an act that would otherwise be a nuisance is authorized by statute, it only ceases to be a nuisance so long as it is within the scope of the powers conferred. If the power conferred is exceeded, or exercised in another or different manner from that prescribed by law, it is a nuisance as to such exercise, or difference in the mode of its exercise. Whenever an act is authorized to be done in a highway that would otherwise be a nuisance, the person or company to whom the power is given is not only bound to exercise it strictly within the provisions of the law, but also with the highest degree of care to prevent injury to person or property of those who may be

effected by such acts." 2 Wood's Railway Law, 970.

The damages recoverable for such injuries as are now under consideration would, of course, be limited to such as has been sustained before the bringing of the suit. Being acts in excess of authority, and constituting a nuisance, their continuance ought not to be presumed. Diminution in value of her property could not be therefore looked to, though a loss of rental, if due to such nuisance, would be a proper element for consideration.

In actions for damage springing from a nuisance, one recovery would not preclude a second suit if the abuse should be continued. This question has been more fully discussed in the case of *Harmon* v. *Railroad Company*, decided at this term, opinion by Special Justice Dickinson.

The evidence upon this part of plaintiff's case is meager and contradictory. Occasional acts of abuse, such as we have mentioned, are shown to have occurred. The switching complained of has, for the most part, occurred upon another part of the street, and not in front of her premises. Trains have occasionally been run at a rate of speed prohibited by the contract and by the city ordinances. A good deal of whistling and bell-ringing has been done, but it is not shown that it was unnecessary to the safe movement of trains. The smoke and steam complained of does not appear to be more than that incident to the usual operation of a railroad. No special damage

appears to have resulted from any of these occasional abuses.

The Circuit Judge, in his special findings, says that he was unable to find, from the proof, any special or particular damage resulting from these unlawful acts. The plaintiff having, however, shown occasional acts in excess of the lawful use of this street under the contract with the city, is entitled to nominal damages.

The judgment of the Circuit Court will be set aside, and judgment rendered here for costs and nominal damages.