JOHN R. PEPPER *et al. v.* UNION RAILWAY COMPANY

AND

TENNESSEE BREWING COMPANY *v.* UNION RAILWAY COMPANY.

(*Jackson.* April Term, 1904.)

1. **MUNICIPAL CORPORATIONS.** Railroads on streets authorized by legislature.

The legislature may authorize the building of a railroad across or lengthwise streets or alleys of an incorporated town or city. (*Post, pp.* 57, 58.)

Cases cited and approved: Railroad v. Adams, 3 Head, 396; Railroad v. Bingham, 87 Tenn., 522.

2. **SAME.** Same. Right of occupancy of streets granted by special legislation, when.

The right of occupancy of the streets of an incorporated town or city by a railroad may be granted by special legislation, especially where the railroad enters such town or city with the consent of the municipal authorities empowered to give such consent. (*Post, p.* 58.)

Acts cited: 1875, ch. 142.

3. **SAME.** Same. Same. Occupancy of streets by railroads under grant of municipal authorities.

A railroad company incorporated under our general incorporation statutes (Acts 1875, ch. 142, and amendments thereof) may construct its road on the streets and alleys of an incorporated town or city where so empowered by the proper municipal authorities. (*Post, p.* 58.)

Acts cited and construed: 1875, ch. 142.

**4. SAME.** Same. Same. Same. But railroads cannot occupy streets exclusively or destroy them as public highways.

But railroads can not so occupy the streets of a city by the consent of the municipal authorities or of the legislature as to destroy them as public highways, and thus divert them from the use for which they were primarily intended, or seriously interfere with public travel thereon. (*Post, pp.* 58-66.)

Acts cited and construed: 1875, ch. 142.

Cases cited and distinguished: Railroad v. Adams, 3 Head, 396; Railroad v. Bingham, 87 Tenn., 522; Harmon v. Railroad, 87 Tenn., 614; Montgomery Co. v. Railroad, MS., December term, 1903.

Cases cited and approved: Dubach v. Railroad, 89 Mo., 483; Schopp v. St. Louis, 117 Mo., 131; Lockwood v. Railroad, 122 Mo., 86; Knapp v. Railroad, 126 Mo., 26; Ligare v. Chicago, 139 Ill., 59; Railroad v. Louisville, 8 Bush, 415; Commonwealth v. Railroad (Ky.), 68 S. W., 628; Commonwealth v. Railroad, 27 Pa., 339.

**5. SAME.** Abutting landowner is entitled to an injunction against construction of railroads on streets, when.

The owner of land abutting on a street is entitled to an injunction to prevent the laying down of railroad tracks on the street, where the occupancy of the street by the railroad will seriously interfere with his right of travel thereon, in common with the public, and will interfere with his rights of ingress and egress, and will inflict upon him a special injury not common with, but distinct from, that of the general public, and for which he can not obtain compensation at law commensurate with the injury sustained. (*Post, pp.* 58-69.)

Cases cited and approved: Riedinger v. Railroad, 62 Mich., 29; Railroad v. Strauss, 37 Md., 237; Railroad v. Eisert, 127 Ind., 156; and the cases cited and approved under the preceding headnote.

**6. INJUNCTION.** To prevent construction of railroad on street at instance of abutting landowners; case in judgment.

Where the owners of land abutting on a street forty-one and a half feet wide, with two railroad tracks on it, one of which is constantly more or less occupied by cars, and over the other trains are passing every hour of the day, have large manufacturing establishments fronting on said street, through which the materials used and the products manufactured by them are hauled, the result of putting a third railroad track on such street, with the accumulation of car traffic resulting therefrom, would practically destroy it for public use, and seriously interfere with, if not destroy, the easement of access of such abutting landowners to their several pieces of property, and would subject them to such peculiar and irreparable damage that they are entitled to an injunction to prevent it.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

HENRY CRAFT, for John R. Pepper *et al.*

F. ZIMMERMAN, for Tennessee Brewing Co.

MCFARLAN & CANADA, for Union Railway Company.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

These are consolidated cases. The bills were filed by the several complainants, the owners of large and valuable properties on Tennessee street, in the city of Memphis, seeking a perpetual injunction against the defendant railway company, restraining it from laying down a railroad track on that street in front of their properties for the passage of its trains, upon the alleged ground that to permit this would work injury to them which could not be compensated in damages.

Before considering the peculiar conditions averred by the complainants as entitling them to relief, it is proper to ascertain the exact rights of these several parties and the general rule of law to be applied in a case as is the present.

First, as to the franchise and contract rights of the defendant company. The record discloses that it was organized under the general incorporation acts of 1875 and certain acts amendatory thereof. Under its charter the company was authorized to build a commercial railroad around the city of Memphis, in this State, with certain lateral branches. One of the provisions of the charter, following the terms of the statute which authorized the creation of this corporation, is "that the line of track of the road shall be so constructed as not to interfere with the convenient travel of the public along the highways, county roads, streets and alleys of cities, towns and villages, and so as to allow cars, wagons, carriages and other vehicles conveniently and safely to pass over and under the line of track, and so

as not to interrupt traveling on foot or horseback or in vehicles of any kind, from the necessary or proper use of the public road, street or alley in the usual and proper mode for their conveyances."

The State, by this statutory provision, while according the right to a railroad corporation, with the consent of proper authorities, when necessary, or when convenience required or suggested it, to enter longitudinally or otherwise upon a public highway with its tracks, distinctly recognized that the primary purpose for which such a highway is constructed is its use by the public, traveling on foot or horseback, and in such vehicles as are popularly applied to business or pleasure. The Union Railway Company regarded this limitation as one which necessarily attached to its right to exist as a corporation, and embodied it literally in its charter.

Clothed with chartered powers, this company entered into a contract with the city of Memphis by which it was permitted to construct a line of railroad "southwardly along the river front, and in and along Tennessee street . . . southwardly . . . to the north line of Calhoun street at its intersection with Tennessee street." The route projected and covered by this contract would carry this railroad, if finished according to its terms, along the front of the property of these two complainants.

The right of the legislature to authorize the building of a railroad across or lengthwise streets or alleys of an incorporated town or city is not an open one in this

State.   *Tenn. & Ala. R. R. Co.* v. *Adams,* 3 Head, 396;
*Railroad* v. *Bingham,* 87 Tenn., 522, 11 S. W., 705, 4
L. R. A., 622.   And we think this right, which could be
granted by special legislation prior to the adoption of
the constitution of 1870, equally pertains to a railroad
incorporated under the general incorporation act of
1875 (Acts 1875, p. 232, c. 142) ; especially where such
road enters an incorporated town or city with the con-
sent of the municipal authorities empowered to give
such consent.   That the local government of the city of
Memphis was authorized to give consent in the present
case does not admit of doubt.   *R. R.* v. *Bingham,* supra.

. While this is conceded, yet it does not follow that a
municipality can agree to such an occupancy of one of
its streets by a commercial railroad as to give it prac-
tically the exclusive use of the streets, or, which is the
same thing, destroy it as a highway, and thus divert it
from the use for which it was primarily intended.   The
public is entitled to pass unhindered, by the usual
modes of travel, along the streets of a city, and what-
ever seriously interferes with this right may be com-
plained of and corrected, at the instance of the public,
by proceedings properly instituted to that end.   But
the owner of abutting property, while as one of the
public he shares in this general right, has a distinct
interest which adheres to his property, and which he
can call upon the courts to protect, and, if invaded, to
redress.   He has, in common with the public, the ease-
ment of a reasonable and unobstructed passage and

Pepper v. Railroad.

repassage over its surface, and, in addition, the right of ingress and egress, or, as it is called in some of the New York cases, "the easement of access" to his property for all purposes of pleasure or business.

The legislative power over the streets of cities is very great, yet an examination of the cases will show that it is not without limitation. Held in trust, as they are, they cannot be diverted so as to destroy either the public interest or private rights which exist in them. Ell. on Roads & Streets, 18. Even in a State where the doctrine prevails that laying a track along the established grade of a street for the operation of cars thereon was not subjecting the street to a use different from that contemplated in the original grant (*Lackland* v. *R. R. Co.*, 31 Mo., 183), yet it has been there held that the city could not, in the exercise of its power or municipal control, devote the streets, or a part of them, to a purpose inconsistent with the rights of the public or abutting property owners. *Dubach* v. *R. R. Co.*, 89 Mo., 483; s. c., 29 A. & E. Ry. Cases, 609.

Perhaps, however, the case which best emphasizes the views of that court in this question is that of *Lockwood* v. *Wabash R. R. Co.*, 122 Mo., 86; s. c., 1 A. & E. R. Cases (N. S.), 16. The facts there were that the complainant, Lockwood, owned a valuable lot, covered with buildings, abutting on Collins street, in St. Louis, between Carr and Franklin streets; that the access to Collins street was an important element in the value of his property; that this street was only 40 feet wide

between building lines, and, after deducting the sidewalks on both sides, there was left a roadway of only 24 feet; that a railroad track, under municipal authority, had already been laid down on the side of the street next to the complainant's property, and under like authority a second track was being constructed on the other side. It was insisted by the plaintiff that the effect of operating cars on these two tracks would be to destroy that street as a public thoroughfare, and would work irreparable injury to his property. To prevent this result an injunction was asked and granted. By a judgment of the circuit judge this injunction was made perpetual. Affirming the action of the lower court, the supreme court, while conceding that the public must submit to necessary inconveniences in the public highways, yet reaffirmed what was said in *Schopp* v. *City of St. Louis,* 117 Mo., 131, 22 S. W., 898, 20 L. R. A., 783, to wit: "The public highways belong from side to side and from end to end to the public, and the public are entitled, not only to a free passage along any portion not in actual use of some other traveler, and the abutting property owner has the right to the free and unobstructed passage from and to his property." Applying the general principle to the facts of the particular case, the court then said: "We are satisfied that the maintenance of this steam railroad in this narrow highway, devoted as it is to wholesale business, requiring heavy, broad trucks and wagons, must necessarily result in denying the public and abutting property owners the

right to use this street as they were entitled under the laws of the State, and that the ordinance virtually destroys it for street purposes, and therefore the assembly had no power to enact it."

Again the question was presented to the same court in *Knapp, Stout & Co.* v. *Ry. Co.*, 126 Mo., 26, 28 S. W., 627. The established rule of Missouri, it was there conceded, was that under legislative sanction a railroad company might lay its tracks and operate its cars longitudinally or otherwise, on the streets of the city, and that for resulting incidental injury there could be no recovery; yet it was held, after a review of all the cases, very clear that "a municipal corporation has no power to grant to a railroad company such use of a street as will destroy its usefulness as a public thoroughfare, . . . or unreasonably interfere with the right of an abutting property holder of access to and egress from his property."

To like effect are *Ligare* v. *City of Chicago*, 139 Ill., 59, 28 N. E., 934, 32 Am. St. Rep., 179; *L. C. Ry. Co.* v. *City of Louisville*, 8 Bush, 415; *Commonwealth* v. *Interstate R. R. Co.* (Ky.), 68 S. W., 628; *Commonwealth* v. *Erie & N. E. R. R. Co.*, 27 Pa., 339, 67 Am. Dec., 471.

In all these cases the respective rights of the public and of the abutting property owners to the streets of the city or town are recognized, as well as the limitation in the matter of municipal control, but, in addition, the power and duty of courts to interfere for the protection of these respective interests is also maintained. That

it is the duty of an equity court to interpose with its process of injunction at the instance of an adjoining property owner who will suffer, by the laying down of the railroad tracks on the streets of the city, a special injury not common with, but distinct from, that of the general public, and for which he cannot obtain compensation at law, we think well established. *Riedinger* v. *Marquette & W. R. Co.*, 62 Mich., 29, 28 N. W., 775; *B. & O. Ry. Co.* v. *Strauss*, 37 Md., 237; and *Chicago, St. Louis & P. R. R. Co.* v. *Eisert*, 127 Ind., 156, 26 N. E., 759.

It will be seen from these authorities that, whether a commercial railroad is regarded as a new servitude imposed on a street, or whether the abutting property owner has an interest in the fee of the street, or only an easement of access to and egress from his property, with a right, in common with the public, of passage and repassage over it, with legislative sanction it may lay down its tracks and run its cars thereon. While this, however, is true, the same authorities are clear that in doing this it cannot monopolize a street so as to destroy its usefulness as a public highway, or work irreparable injury to property owners. This last proposition, we think, becomes more controlling where the railway enters with its charter right fettered by a restrictive condition, such as is found in the present case.

These holdings would seem to be in harmony with sound public policy, and certainly they come from courts of the highest respectability. Under their au-

thority it would appear that a citizen whose property is menaced by conditions such as are charged in the several bills of these complainants is entitled to have his prayer for prohibitive relief carefully considered by a court of equity before it is denied. But it is said, however it may be in other jurisdictions, that this court has adopted another and a different rule, which authorized the chancellor to deny the relief sought by the complainants, and which, under the doctrine of *stare decisis,* requires us now to affirm his action. It becomes necessary, therefore, briefly to examine the cases upon which this contention rests.

The leading case in this State upon the right of a railroad, under its charter, to enter upon the streets of the city, is that of *T. & A. Ry. Co.* v. *Adams,* supra. In that case there was not raised the question as to whether the right to go upon the street involved the right to destroy it as a highway, or the other question as to the right of the abutter to call upon a court of equity for protection, in view of the threatened destruction of his property interest. The real question determined was that the words "from a town or city," used in the railroad charter, gave the company the right to enter such town or city, and lay its tracks upon a street of the city. To exercise the right of entry and occupancy was dependent, it was held, upon the terms of its charter; for "nothing could be claimed that was not expressly given it by the act of incorporation."

*Railroad* v. *Bingham,* supra, was a suit brought by

an abutting property owner to recover damages to her property resulting from the use of the public street for railroad operation. No such question, as we have here, was presented. The right of the railroad, under a contract with the municipality, to be on the street, was not challenged. That case throws no light on the present controversy. This is equally true of the case of *Harmon* v. *Railroad*, 87 Tenn., 614, 11 S. W., 703.

The case, however, which is regarded by defendant as conclusive against complainants, and which no doubt to some extent controlled the chancellor in the dismissal of these bills, is that of *Montgomery Co.* v. *Tennessee Central Railroad,* decided in a manuscript opinion at the December term, 1903, of this court. The case was disposed of on demurrer. The facts set out in the bill, briefly stated, were that Montgomery county was the owner of a lot abutting on Spring street in the city of Clarksville, between Commerce and Main streets, and that under a contract with the city of Clarksville the Tennessee Central Railroad Company and its contractors had entered upon Spring street with a view of laying a track thereon. There were general averments in the bill that complainant's property would be rendered valueless without the use of that street; that by the direction of the railroad an excavation was being made covering the front of complainant's property; but it was not averred that this excavation would destroy the easement of access to the lot of the complainant, or that the railway tracks, when laid, would occupy the

entire surface of Spring street, or so much of it as to render it valueless as a public thoroughfare, or render it impossible for complainants to enjoy its property. In addition, there was a distinct averment, as we understand the bill, taking it all together, that Spring street was simply "one of the outlets of this property."

Upon considering the case it was conceived by this court that there was nothing in the bill from which it could be fairly implied that Spring street was to be destroyed as a public highway, or that there was to be inflicted upon the complainant by the railroad company damages which could not be well compensated in a civil action. So that, whatever may have been said in disposing of that case in the way of general observation, its authority cannot be invoked, so as to control another so distinct in character and in fact as the present.

After an examination of our reports, we are satisfied there is nothing in any one of them which will preclude a court of equity from giving relief to an abutting property owner who presents a proper case for interference by injunction. But such a case must be clearly made out to call this extraordinary power of the court into activity. For, as a matter of course, a restriction in a charter as to the public streets, such as is in that of the defendant company, implies the right of entry upon public highways with the consent of the proper authorities, and the right of user when once made. As is said by Judge Black in the Erie Case, supra: "If the defendants have the right to make the road on the street,

113 Tenn—5

they have the right to use it when made.    They may
carry all freight and passengers they may get.    If the
number of cars and locomotives necessary to do their
business be so great as sometimes to choke the thorough-
fare over which they pass, it must be remembered that
the same thing would happen in a much greater degree
if the twentieth part of the business were done in car-
riages, coaches, or common road wagons.    If the cars
are suffered to stand for an unnecessary length of time
at places inconvenient to the public, the act is indictable
as a nuisance, and for any want of proper care the de-
fendants are liable in damages to the persons injured
by it."

All this is conceded, but what we hold is that a public
street, either with or without the consent of municipal
authorities, cannot be converted into a mere roadbed
for railroad tracks, over which trains will be constantly
operated, to the destruction of the public use, and of
the business and property interest of those abutting
thereon.    Such an appropriation is a complete subver-
sion of the purpose for which the street was opened, and
in a case where no damages properly recoverable by
these property holders would be commensurate with the
injury sustained a court of equity on reason and au-
thority should intervene for their protection.

We come now to the consideration of the facts pre-
sented by the voluminous record in these two causes.
Many depositions have been taken, and in these are
found many diverse views, colored more or less by the

pecuniary interest or personal bias of the witnesses. We have gone carefully through this mass of testimony, but it would be a waste of time to undertake to set it out in detail. It is sufficient, for our purpose, to state that the record shows the Tennessee Brewing Company to be the owner of five lots with an aggregate front of 269 feet on the west side of Tennessee street, lying between Butler street on the south and an alley running between Butler and Calhoun streets on the north. On these lots are a number of buildings erected by the company at an expense of more than $300,000. These buildings are used by the company in its business of brewing beer, and are essential to it. On the east side of Tennessee street are other lots belonging to the company, which are also occupied with necessary houses.

The record further shows that the product of its brew is largely sold to customers in the city of Memphis, delivery to whom can only be made in heavy truck wagons, and that promptitude in making such delivery is essential to the successful conduct of the business of the company, which now aggregates from six hundred to seven hundred thousand dollars annually.

With regard to the property of complainants John R. Pepper and associates, it appears that it is also located on the east side of Tennessee street at its intersection with Butler street, and has on it valuable improvements. These parties are very extensively engaged in the business of refining sugar and molasses, and in carrying on their enterprise drays and many large wagons

are employed by them.   The buildings of both of these complainants have their main entrances and exits on Tennessee street, so that the large part of crude material received by them and the great bulk of their finished product pass in and out through these.   In the case of the Brewing Company the usual route to the city is through Tennessee street, and thence to Butler or Calhoun street.   As to the other complainants their route is through Tennessee street and Butler street to the city; on returning these routes are simply reversed.

Tennessee street is 41 feet and 6 inches wide between curb lines, and there were at the time of the filing of the present bills and for many years prior thereto, two parallel railroad tracks, laid longitudinally thereon.   The most western of these tracks is spoken of in the record as an industrial track, laid down by the railroads at the instance of many manufacturing establishments on that street for their convenience in receiving and shipping freights.   On this track at all times there are a greater or smaller number of cars, which are being loaded or unloaded, in front of one or more of these various establishments, including those of the complainants.   The eastern track is controlled by the Illinois Central Railroad, and is located about the center of the street. Over this track, and during every hour of the day, trains are passing and repassing.   The record makes it clear that the delays and dangers incident to the use of the street by the railroads has already seriously interfered with it as a thoroughfare, and it is evident that complainants already suffer from existing conditions much in-

convenience. We think it clear that the effect of putting a third track on this narrow street, with the accumulation of car traffic resulting therefrom, would practically destroy it for public use, and seriously interfere with, if not destroy, the easement of access of the complainants to their several pieces of property.

Even if it be true that Butler street was sufficient, in addition to the general traffic now imposed upon it, to bear the traffic of complainants discharged and received by new openings made through their several business houses to it, we know of no principle which would require them at heavy expense to adjust their properties so as to avail themselves of this street, at the instance of and for the accommodation of the defendant company. Bordering both streets as they do, they cannot be compelled to surrender the one and depend upon the other. But the fact is that Butler street has a width between curb lines of only 19 feet, and is already taxed to its utmost capacity. That it would fail to furnish facilities equal to those which complainants have long enjoyed on Tennessee street is manifest. At any rate, we think, as this third track cannot be laid on this street without violating the restriction in the charter of the Union Railroad Company, and as complainants' valuable properties and business interests would be exposed to serious peril thereby, they can well invoke the protection of a court of equity.

The decree of the chancellor dismissing these bills is therefore reversed, and the injunction prayed for by the complainants is awarded, and made perpetual.