## *Ex parte* PIATT.

No. 4303., Opinion Filed July 29, 1913.

(134 Pac. 53.)

1. **MUNICIPAL CORPORATIONS—Control of Streets—Franchises.** No grant, extension, or renewal of any franchise or other use of streets, alleys, or other public grounds or ways of any municipality shall divest said municipality of its control and regulation of such use and enjoyment.

2. **STREET RAILROADS—Municipal Corporations—Validity of Ordinance—Right Acquired in Streets—Extent.** A corporation, formed under the general laws of the state, pursuant to section 1408, Comp Laws 1909 (Rev. Laws 1910, sec. 1482), with power to use electricity for the propulsion of its cars and rolling stock, in addition to the powers exercised by railroad corporations generally, may, with the consent of the proper authorities of any city or town in the state located upon or along its lines, construct a system of street railways upon such streets of said city or town, upon such terms and conditions as may be agreed upon between such corporation and such city or town, but the grant of the use of the street for such purpose by such corporation, by such city or town, is subject to the rights of the public.

   (a) Under such grant such corporation has no right to use a street for such purpose when by such use it must necessarily

result in denying the public of the right to use the same as a public thoroughfare, and for such purposes as the public is entitled to use it under the laws of the state.

(b) Such franchise or grant is subject to such public right, and to that extent must yield to such rights of the public.

(c) Such municipality having granted a franchise to such public service corporation and consented to its use, such municipality having thereafterwards adopted an ordinance forbidding such public corporation using a certain street between certain termini, for such purpose, on the ground that such use by such public service corporation of said portion of said street would destroy the rights of the public to use such street as a public thoroughfare, held that it was within the power of such municipality to pass such an ordinance, and the relator having been apprehended by the city authorities on the charge of violating said ordinance, it appearing that said ordinance had been duly passed, the said relator will not be discharged, but remanded to the custody of the authorities of said municipality.

(Syllabus by the Court.)

Application for writ of *habeas corpus* by Fay Piatt. Writ denied.

*H. A. Kroeger* and *Ledbetter, Stuart & Bell,* for petitioner.

*J. W. Johnson,* City Atty., and *Geo. H. Giddings,* for Oklahoma City.

PER CURIAM. On November 6, 1905, Oklahoma City, by ordinance No. 549, granted to the Oklahoma Interurban Traction Company, a corporation, a franchise to construct, operate, and maintain a system of electric street railway over and along certain streets in said city. Section 1 of said ordinance reads:

"The right is hereby granted to the Oklahoma Interurban Traction Company, its successors, and assigns, hereinafter referred to as said Railway Company, to establish, construct, and maintain a street railway, commencing in the southeast part of the city limits east of the Santa Fe near Choctaw street, thence north along the Santa Fe to Texas or Pottawatomie avenue; thence north along Hudson avenue to Grand avenue, west on Grand avenue to Walker avenue, south on Walker avenue to California avenue, east on California avenue to a connection with Hudson avenue line, with trolleys, trolley wires, and all necessary and convenient fixtures and

appurtenances as needful in the construction and operation of such railroad and have the right to construct for the purpose of 'transmitting the power for the propulsion of its cars, overhead trolley systems suspended on poles placed along the curb lines or in the center of such street or streets when necessary; provided, that this grant shall be subject to all the restrictions and regulations hereinafter contained; provided, that said railway company will not build its line upon any other street than those designated herein without the consent of the city council of said city."

On May 10, 1909, the city passed another ordinance, No. 1040, the material part of which reads:

"That section 1 of ordinance No. 549 of the city of Oklahoma City, entitled 'An ordinance authorizing the Oklahoma Interurban Traction Company of Oklahoma City, its successors and assigns, to construct and maintain an electric railway system in the streets and alleys of Oklahoma City,' be and the same is hereby amended to read as follows:

"Section 1.    The right is hereby granted to the Oklahoma Interurban Traction Company, of Oklahoma City, its successors and assigns, hereinafter referred to as said Railway Company, to establish, construct and maintain in the streets, avenues and alleys of the city of Oklahoma City, as now existing or hereafter extended, a system of electric railroads, consisting of either single or double track, with trolley wires, and all necessary and convenient fixtures and appurtenances needful in the construction and operation of such railroad, and have the right to construct for the purpose of transmitting the power for the propulsion of its cars, overhead trolley systems suspended on poles placed along the curb lines or in the center of such street when necessary; provided, that this grant shall be subject to all the restrictions and regulations of ordinance No. 549 of the city of Oklahoma City, as herein amended."

On July 26, 1909, the city passed another ordinance, No. 1081, the material part of which reads:

"Sec. 3.    No person, firm, or corporation shall construct, operate or maintain any street railway track or tracks north and south along or over Robinson street, between the St. Louis and San Francisco Railway right of way on the south and Fifteenth street on the north.

"Sec. 4. Any person, firm or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined 'not exceeding one hundred dollars for each offense, or by imprisonment in the city jail for thirty days, or by both such fine and imprisonment.

"Sec. 5. Whereas, it is necessary, for the public health, peace and safety of the inhabitants of said city to have the said streets open to public travel in and through said city without obstruction or delay, at all times, an emergency is therefore declared to exist and it is ordained that it is necessary for the preservation of the public health, peace and safety of the inhabitants of said city that this ordinance be in full force and effect from and after its passage, approval and publication as required by law."

On November 14, 1910, the Oklahoma Interurban Traction Company assigned and delivered both franchises thus granted to the Oklahoma City Traction Company, whereupon the city on April 26, 1911, passed another ordinance, No. 1483, the material part of which reads:

"An ordinance ratifying and confirming the transfer and assignment of the property, property rights, privileges and franchises of the Oklahoma Interurban Traction Company of Oklahoma City, Oklahoma, to the Oklahoma City Traction Company, of Oklahoma City, Oklahoma.

"Be it ordained by the mayor and councilmen of the city of Oklahoma City:

"Section 1. That the sale, transfer, assignment and conveyance by the Oklahoma Interurban Traction Company of Oklahoma City, Oklahoma, to the Oklahoma City Traction Company, of Oklahoma City, Oklahoma, of all its property, real, personal and mixed, and of all the rights, powers, privileges and franchises heretofore granted to the Oklahoma Interurban Traction Company by the city of Oklahoma City by and through ordinance number five hundred forty-nine (549) and number ten hundred forty (1040), and by and through ordinance number fourteen (14) of the former town of Capitol Hill, now being a part of the city of Oklahoma City, be and the same is hereby consented to, ratified and confirmed and approved, and the city of Oklahoma City hereby assents to said transfer and to the use and exercise by the Oklahoma City Traction Com-

pany of the rights, powers, privileges and franchises assigned and transferred to it by the said company."

These franchises were granted by the municipality under authority delegated to it by the Legislature (Comp. Laws 1909, sec. 1409 [Rev. Laws 1910, sec. 1483]), which reads:

"Such corporations in addition to the powers exercised by railroad corporations generally, may, with the consent of the authorities of any city or town in the state of Oklahoma located upon or along its lines, construct system of street railways upon such streets and upon such terms and conditions as may be agreed upon between such corporations and such city or town. * * *"

On August 24, 1912, the Oklahoma City Traction Company, with intent to act under its franchise, attempted to extend its system by laying its tracks along Robinson street, and placed petitioner, together with other of its employees, at work thereon. He was at once arrested for an alleged violation of ordinance No. 1081, and is now before us in obedience to our writ of *habeas corpus,* to which a return has been made by the city's chief of police. For return to the writ it is said that petitioner is not illegally restrained of his liberty, because, among other things, it is alleged that he is held under a warrant duly issued upon proper complaint by O. P. Price, municipal judge of said city; both instruments are filed as exhibits, and charge a violation of said ordinance. The return further alleges:

"That said ordinance was passed by the city council of said city, pursuant to authority conferred upon such city council as the legislative body of said city and as a police regulation, for the public health, peace, and safety of the inhabitants of the said city, to have the said street open to public travel in and through said city without obstruction or delay at all times; * * * that such ordinance is a valid and subsisting ordinance; * * * that said ordinance No. 1081 was enacted by the mayor and councilmen of the city of Oklahoma City in the exercise of police power of the city, and is a reasonable exercise of the said police power, and was in good faith and not capriciously enacted; that the reasons for the enactment of the said ordinance are * * * that the said street is a nar-

row one, closely congested with ordinary and usual traffic, being in the main business portion of the city the only north and south street not occupied and interfered with by already constructed lines of street railway, and is necessary to be held open and reserved from occupancy by street railways in order that there may be reserved in the principal business portion of the city a north and south street devoted solely to the ordinary and usual street traffic; that pedestrian traffic across said street and along the sidewalks at the side thereof, particularly in the business portion of the city, is very heavy, and that the needless occupation of the same with street car tracks would endanger the safety, not only of pedestrians, but of the public being hauled in ordinary conveyances over and across the same; * * * that the conduct of a street railway upon the same would * * * to a large extent, destroy the usefulness of the purpose to which said street is devoted by the public, and by the owners of the property thereon; and, finally, that there are outstanding and issued by the city of Oklahoma City two franchise ordinances, one held by the Oklahoma Interurban Traction Company, under each of which ordinances the holders thereof were pretending and attempting to occupy the streets, the use of which was forbidden by ordinance No. 1,081, each of said companies being apparently entitled to an equal right to the use and occupation of such streets."

Section 7, art. 18 (section 339, Williams' Ann. Const. Okla.) of the Constitution of this state provides that:

"No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment."

This provision of the Constitution automatically became a part of said franchise. Under its contractual terms the city retained the power to control and regulate the use and enjoyment of the street under said franchise by said street railway company, so as to preserve to the public their right to the reasonable use of the street as a public thoroughfare, and to protect such use, as between the public and the street

railway company, when the street railway company occupied said street or avenue, or attempted to occupy same, by virtue of said franchise. Such, however, seems to be the law independent of said constitutional provision.

In 3 Dillon on Mun. Corp. (5th Ed.) sec. 1241, it is said:

"A grant by statute, or by a municipality under delegated authority, to a railroad or other corporation of a privilege upon a street or highway to enter, cross, or pass along it with its tracks and structures is, in the absence of a clearly expressed intention to the contrary, a grant subject to the existing public right of use, and is to be exercised in such manner as to interfere as little as possible with those whose benefit the street or highway was originally laid out and opened. Hence authority conferred upon a municipality to grant the right to construct, or to consent to the construction of, any kind of railroad in a city street, is limited in its scope to the grant of a right which permits the concurrent use of the street by the railroad and by the public, and the municipality has no power thereunder to confer upon a railroad company the right to so occupy the streets with its tracks as to destroy the street for purposes of travel and to exclude the public therefrom."

In support of this doctrine he cites, in note 3, *Pepper v. Railroad,* 113 Tenn. 53, 85 S. W. 864, where the court said:

"* * * It does not follow that a municipality can agree to such an occupancy of one of its streets by a commercial railroad as to give it practically the exclusive use of the streets, or, which is the same thing, destroy it as a highway, and thus divert it from use for which it was primarily intended. The public is entitled to pass unhindered, by the usual modes of travel, along the streets of a city, and whatever seriously interferes with this right may be complained of and corrected, at the instance of the public, by proceedings properly instituted to that end"

—and where the court, quoting approvingly from *Schopp v. City of St. Louis,* 117 Mo. 131, 22 S. W. 898, 20 L. R. A. 783, further said:

"We are satisfied that the maintenance of this steam railroad in this narrow highway, devoted as it is to wholesale business, requiring heavy, broad trucks and wagons, must necessarily result in denying the public and abutting property owners the right to use this street as they were entitled under the laws of the state, and that the ordinance virtually destroys it for street purposes, and therefore the assembly had no power to enact it."

In *Dubach et al. v. Hannibal & St. Joe Railroad Company,* 89 Mo. 483, 1 S. W. 86, the court said:

"If the character of a street should be such that defendant's track could not be laid upon the street without hindering the public from using it, then, no matter how important to the company that its track should be laid in that street, it could not be done. Nor is it competent for a city to authorize such use of a street dedicated as a street as will destroy it as a thoroughfare for the public use. *Belcher Sugar Refining Company v. St. Louis Elevator Co.,* 82 Mo. 124."

In *Detroit City Railway Co. v. Mills,* 85 Mich. 634, 48 N. W. 1007, the court said:

"The complainant cannot lawfully construct and operate its road in a street too narrow to admit the passage of its cars and other vehicles at the same time, nor so construct it as to interfere with the rights of the general public in the street * * * nor in a street, though of sufficient width, if its conditions be such that the operation of the railway will result in the practical exclusion of others from the use of the street. A railway so constructed and operated would be a public nuisance, and the courts would abate it."

See, 1 Booth on Street Railways, sec. 57.

Assuming that, from the language used in the franchise contained in ordinance 549 and 1040, there might be fairly inferred a grant to the company to establish, maintain, and construct its track upon and along Robinson avenue, if such use of said avenue under this franchise would result in denying the public the right to use it as a street and a public thoroughfare, as it is entitled to under the law, then that part of the franchise must yield to the superior rights of the public

to the use of said street or avenue as a public thoroughfare. Hence, the authority of the city in the exercise of certain rights (section 7, art. 18, Const., *supra*) to pass the ordinance preventing the corporation from establishing, constructing, and maintaining its tracks upon said avenue or street, between certain *termini,* if it would have the effect of denying the public of its use.

The city having the power to pass such an ordinance, there being no contention that the ordinance was not passed in compliance with the requirements of law, upon a hearing upon a writ of *habeas corpus,* the only question that will be determined is as to whether the municipal authorities were acting within their granted powers in apprehending the petitioner. If he is held by virtue of an ordinance that the city had the authority to pass, the question as to whether the contention of the city that the constructing and maintaining the tracks of said street railway line upon said portion of said street or avenue had the effect of denying or depriving the public of the use of the same as a public thoroughfare will not be inquired into upon this hearing. As to whether the determination of that question by the municipality in the passing of the ordinance is conclusive and cannot be inquired into by the courts upon the final trial of the petitioner as to his guilt or innocence under the charge of having violated said ordinance, that question is not now before this court, and will not be passed on.

All the Justices concur.