LESTER P. STRATTON

*v.*

MRS. ZOIE CONWAY et al.

(*Nashville,* December Term, 1956.)

Opinion filed April 1, 1957.

W. C. RODGERS, Memphis, for plaintiff-in-error.

CHARLES L. GLASCOCK, and STONE & STONE, Memphis, for defendants-in-error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The question presented by this suit is whether or not the owner of real property may sell it to someone over the objection of an adjoining owner without being liable in damages to the objector when the person to whom it is sold is a negro and the surrounding property is owned by white persons.

The declaration in this suit was filed by Mr. Stratton against the owner of the adjoining property and the real estate company who had it for sale for damages for the sale of property in a purely white neighborhood to negroes. The declaration was demurred to on various grounds but the determinative ground is, admitting the parties had been damaged by the sale, there was "no warranty of law for the maintenance of such actions."

The trial judge sustained the demurrer *in toto* and dismissed the suit. An appeal has been seasonably perfected, briefs filed and we have heard argument. After a thorough consideration of all the pleadings and briefs and many authorities we are now ready for a determination of the question.

It is conceded in the brief and was in the oral argument before this Court that the question of color or discrimination between the white and negro races is not here involved. It is likewise conceded that the defendants had a right to sell their property to negroes, if they so desired, but it is claimed that by doing so they damaged the property of plaintiff (it is conceded by the demurrer that they did so damage the property in the sum of $2,750) and that they are responsible in damages as a consequence thereof.

In *Shelley v. Kraemer* (*McGhee v. Sipes*), 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, courts of last resort of Michigan and Missouri had upheld restrictive covenants as to the occupancy or ownership of property as between whites and negroes. The Supreme Court of the United States in the *Shelley v. Kraemer* case, *supra,* held that the action of the State Courts in enforcement of those restrictive covenants constituted acts of the States within the Fourteenth Amendment, and in granting judicial enforcement of the covenants the States denied the purchasers equal protection of the laws. Subsequently in *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1587, the Supreme Court of the United States in an action by the parties involving restrictive covenants against the sale of realty to non-Caucasians for damages, the Court held that the co-covenantor who conveyed his

property without incorporating the restriction and thus permitting non-Caucasians to operate the property that an award by the State court of damages against the covenantor for a breach of this restrictive covenant would constitute a State action which would deprive non-Caucasians, unidentified but identifiable, of equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution.

It is thus argued by the plaintiff in error that under the Jackson case that the Supreme Court of the United States there held that they would not enforce the express discriminatory contract because it transcends the Fourteenth Amendment of the Constitution of the United States, but that in that opinion the Court held that they would not deny just compensation for any result in injuries, flowing from a sale of such property. Thus it is seriously and ably argued here that this present action is bottomed on the fact of resulting damages as a consequence of the sale and not on discrimination. It is argued that this action is not on discrimination but is on the fact solely that the sale "results in the destruction and depreciation of the value of his property. The same consequence would follow the sale to any other person resulting with the same effect. It matters not whether he is white or black, red or yellow, or if a mixture of all, or none."

▪▪ ▮▮▮▮ It is thus conceded that the act of selling the property is lawful, but it is argued that it is prejudicial. Under such circumstances an act of the kind under the pleadings here is *damnum absque injuria*. "Literally 'A loss without an injury'. It is a phrase used to describe a loss arising from acts or conditions which do

not create a ground of legal redress." 17 C.J., p. 1125; 25 C.J.S., p. 996. Under this quotation will be found literally dozens upon dozens of cases from various States in the United States, including the Supreme Court of the United States particularly the case of *Marbury v. Madison*, 1 Cranch 137, 164, 5 U.S. 137, 164, 2 L.Ed. 60, and many others. There will also be found a very apt quotation from Blackstone which is:

"If I can prove the tradesman a bankrupt, the physician a quack, the lawyer a knave, and the divine a heretic, this will destroy their respective actions; for though there may be damage sufficient accruing from it, yet, if the fact be true, it is *damnum absque injuria* (damage without injury); and where there is no injury, the law gives no remedy. And this is agreeable to the reason of the civil law." 3 Blackstone Comm., p. 125.

To the same effect as that above quoted, under the heading Actions, in 1 C.J.S., sec. 19, p. 1060, will be found a very plausible and reasonable discussion of this question. And to a like effect the authors of American Jurisprudence in Volume 1, of that work, at pages 424 and 425, Sections 32 and 33, under the heading Actions, and the heading Adjoining Landowners, page 505, Section 3, thereof and Section 4, will be found very persuasive and plausible reasoning which in every particular supports the conclusion of the trial judge in sustaining the demurrer herein. Likewise in Volume 52 of Am.Jur., under the heading of Torts, at page 371, thereof, Section 15, the subject will be found discussed at length. In each of these works there are numerous cases cited supporting the conclusion reached by the trial court below.

"Every person is entitled to make a reasonable use of his property. Therefore, while the rightful use of one's own land may not infrequently have some effect to diminish the value of an adjoining estate, or to prevent its being used with the comfort which might otherwise have been anticipated, this is *damnum absque injuria,* as to which the law cannot interfere." 1 Am.Jur., p. 505, Sec. 3.

Among the other authorities cited for this statement is our case of *Iron Mountain R. Co. v. Bingham,* 87 Tenn. 522, 11 S.W. 705, 4 L.R.A. 622, which is an opinion by Mr. Justice Lurton. In that opinion among other things he says:

"Life will not be altogether so comfortable. But does the law give damages for such consequential injuries? To entitle a plaintiff to recover damages there must not only be an injury, but the injury must be the result of some wrongful conduct. Where an injury results merely from the lawful and reasonable use of a neighboring estate, no wrong is done and no remedy exists." At page 528 of 87 Tenn., at page 707 of 11 S.W.

Mr. Justice Lurton then cites examples of our light, view and air, etc., cases. Most recent of these is the case of *Granberry v. Jones,* 188 Tenn. 51, 216 S.W.2d 721. Of course this had not been published in his life time but is one written by a member of the present Court.

The author of American Jurisprudence in the same Section last above quoted from Sec. 3, p. 506, says that:

"The test of the permissible use of one's own land is not whether the use or the act causes injury to his

neighbor's property, or whether the injury was the natural consequence, or whether the act is in the nature of a nuisance, but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own and those of his neighbors, and having in view also, public policy.''

This is the test. And under this test there has been no legal violation of any of the rights of others by the sale of this property. This act was done in a lawful manner in the exercise of a legal right of the defendants and in doing so no law was violated and thus the action clearly is not actionable under all the authorities and under reason.

The most recent case that we have found (and the most nearly in point) is that of *Latchis v. John,* 117 Vt. 110, 85 A.2d 575, 577, 32 A.L.R.2d 1203. In this case a fruit stand was erected on residential property but this did not constitute a nuisance and even though the trial court found that by reason of this fruit stand plaintiff's property had been depreciated in value to a certain amount it was held that no suit for damages could thus be maintained. The Court after referring briefly to the maxim above quoted of *damnum absque injuria* concluded thus:

"Here, the defendants' act was lawful and no right of the plaintiff was violated, so he was not entitled to recover damages.''

We thus must conclude that the action of the trial court in sustaining the demurrer is correct and it is affirmed with costs.