## MARY T. CARSON v. THE CENTRAL RAILROAD COMPANY.

DAMAGE FROM BUILDING RAILROAD ON STREET.—The Legislature may grant the right to lay down and construct a railroad upon public streets without providing for compensation for the damage to the owners of property along the line of such street, provided the owners of the property along the line of the streets are not the owners of the contiguous land *usque ad filum viæ.*

LIABILITY OF RAILROAD COMPANY FOR DAMAGE.—If an Act of the Legislature authorizes the laying down in a public street of a railroad, a switch-turnout, and side track, the laying down of the switch-turnout and side track and the use of it is the exercise of a lawful right, from which no liability for damage for consequential injury arises, unless there is some misconduct or negligence.

PROOF THAT RAILROAD TURNOUT IS A NUISANCE.—When a company is authorized by law to construct a railroad in a public street, and necessary switches and turnouts, and the road is built having switches and turnouts, the presumption of law is, that the switches and turnouts are necessary, and one complaining that they are a nuisance has cast upon him the burden of proving that they are so.

INJURY FROM BUILDING STREET RAILROAD.—The mere consequential disadvantages of a street railroad to a particular locality, and its consequential detriment to property along its line, cannot be the subject of a private action, and such injury must be regarded as *damnum absque injuria.*

EVIDENCE OF DAMAGE SUSTAINED BY RAILROAD TURNOUT.—Where a street railroad company is authorized by law to build necessary switches and turnouts, and constructs them, a plaintiff who sues to abate a turnout as a nuisance cannot introduce evidence of the damage he has sustained until he has first introduced evidence tending to show that the switch and turnout are not necessary.

TURNOUT ON STREET RAILROAD.—If an Act of the Legislature grants the right to build a street railroad with the proper and necessary switches and turnouts, and

a turnout and short side track are made from the main track towards and along the sidewalk, upon which the cars run for the purpose of standing until other cars pass and stop to allow passengers to make an exchange of cars, this is a switch and turnout within the meaning of the Act, and the presumption is that it is a proper and necessary turnout.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*A. J. Gunnison,* for Appellant.

The Act of the Legislature, passed April 25th, 1862, gives the right to lay down and maintain the road, " with the proper and necessary switches and turnouts along the entire route." (Stats. 1862, p. 412.) And this right is extended. (Stats. 1863, p. 117.)

The plaintiff's case shows that the act complained of as an alleged nuisance was done under competent authority of the Legislature of the State of California; and what is done by authority of the Legislature of the State cannot be a nuisance.

The power of the Legislature to grant said right cannot be doubted or disputed. (*Chapman* v. *The Albany and Schenectady R. R. Co.,* 10 Barb. 360; *The Trustees of the First Baptist Church, etc.* v. *The Utica and Schenectady R. R. Co.,* 6 Barb. 313.) And further, it was necessary for the plaintiff to prove the allegation in said complaint, which is a material allegation, that said "track" was "not a necessary switch or turnout."

The plaintiff did not produce or offer any evidence upon this point, or prove or attempt to prove this allegation.

Again, the plaintiff failed to show that she was ever obstructed in the free egress or ingress to her premises. The evidence produced by the plaintiff proved that the track complained of did not so obstruct; on the contrary, the only thing attempted to be proved on this point was, that she or her friends were prevented from standing carriages in the

public highway, so as to themselves obstruct the public travel—an unlawful act on her part.

Again, the plaintiff has not shown that she has any rights in said Taylor street beyond those of any other citizen to use the same for traveling. It affects the whole public equally, and she is not entitled to her private action therefor. (*Gunter* v. *Geary*, 1 Cal. 466; *People* v. *Platt*, 17 Johns. 195.)

The decision of the Court is against law. That which is authorized by an Act of the Legislature cannot be a nuisance. (*The Trustees First Baptist Church, etc.* v. *The Utica and Schenectady R. R. Co.*, 6 Barb. 313; *Chapman* v. *Albany and Schenectady R. R. Co.*, 10 Barb. 360; *Williams* v. *The N. Y. Central R. R. Co.*, 18 Barb. 222; *Stoughton* v. *State*, 5 Wis. 291; Hilliard on Torts, 2d Ed., Vol. I, p. 632.) It is admitted in this case that the railroad was constructed under competent authority from the State.

By the general laws of this State governing railroad corporations, the defendant has this power and right to construct switches and turnouts. (Hittell's Laws, Art. 842, Sec. 17.)

*George W. Tyler*, for Respondent.

I do not propose in this case to controvert the proposition that the Legislature had the authority to grant the franchise to defendant's grantors, without providing for compensation to property owners along the line of the streets. It is not necessary to a recovery by plaintiff in this suit that I should do so. The modern authorities, however, are against the power. (*Williamson* v. *N. Y. Central R. R.*, 20 Law Rep. 449.) Appellant is mistaken in asserting that it was necessary for plaintiff to prove that the side track described in the complaint was not a "necessary switch or turnout." The defendant held the affirmative of that issue.

It was probably unnecessary for plaintiff to have made that averment in the complaint; certainly not necessary to prove it. But if it was necessary, appellant cannot take advantage of such failure, for the reason that he put in the

evidence himself to prove that it was not a necessary switch or turnout, which cured the defect. (1 Cal. 117; 6 Cal. 26; 8 Cal. 293; 10 Cal. 190.)

It was unnecessary for plaintiff to show that she had any greater rights to the use of the street in front of her property than any other citizen, by proof. The law defines what her rights are between her property and the centre of the street. She has the sole right to its use, subject to the public right to pass and repass. (7 Port., Ind., 479.) The nuisance complained of is only such to a few individuals, and, therefore, an indictment will not lie. It renders the property of plaintiff less valuable, and lessens the personal enjoyment of plaintiff, and is, therefore, a private nuisance. (Prac. Act, Sec. 249; 5 Barb. 79.)

The second point in appellant's brief seems to be made upon a total misconception of defendant's rights under their charter. Their charter provides for a single track through certain streets, and a double track through certain other streets, with the right to erect depots along the route, and necessary switches and turnouts. A true construction of the Act would seem to imply that switches were necessary in the streets having a double track, to turn the cars from one track to the other; and turnouts in the streets having but a single track, to enable the cars to pass each other; and that along the route depots might be necessary for storing cars.

The opinion of the Court was delivered by Mr. Chief Justice CURREY, at the July Term, A. D. 1867, before Mr. Justice CROCKETT and Mr. Justice SPRAGUE became members of the Court:

An Act was passed in 1862 granting to certain persons named, and their associates and assigns, the right to lay down and maintain an iron railroad within the City and County of San Francisco, along and upon certain streets. (Laws 1862, p. 412.) These grantees assigned the right and franchise to them granted to the company now known as the Central

Railroad Company. In 1863 another Act was passed by the Legislature granting to said Central Railroad Company some further rights and privileges, which, however, do not particularly affect the case before us. (Laws 1863, p. 117.) The Act of 1862 authorized the railroad company to construct its road with a single or double track, with the proper and necessary switches and turnouts along the entire route. Embraced within the line of the road was that portion of Taylor street lying between Turk and Eddy streets, on which the defendant constructed the road, adjoining which is situated the plaintiff's lot and dwelling house, where she resided at the time the road was built. The defendant constructed a switch turnout and side track adjacent to and in front of the plaintiff's property so near the sidewalk as to prevent a carriage standing there, while the switch, turnout, and track was occupied in passing by the defendant's cars. The plaintiff alleges in her complaint that the street in front of her property is forty feet wide between the sidewalks, and that if the tracks of the road at that point had been properly laid, the same would not have interfered materially with the use of the property on either side of the street, but that the switch, turnout, and side tracks, which are wholly on the side of the street next the plaintiff's property, together with the cars which are placed and allowed to stand there by the defendant, when not in actual use in carrying passengers, obstruct the use of the property so as to lessen its value and greatly to discommode her in its enjoyment, and for the injuries of which she complains she prays the Court for a judgment abating as a nuisance said switch turnout and side track, and for damages in the sum of five hundred dollars.

The defendant traversed the material allegations of the complaint, and justified the laying down of the turnout and side track, and the use thereof by the defendant, as proper and necessary, and as authorized by the Acts of 1862 and 1863.

The issue joined was tried before the Court, and resulted in a judgment pronouncing said switch, turnout, and side

42

track to be a private nuisance to the plaintiff, and directing the same to be abated by the Sheriff as such nuisance, and also adjudging that plaintiff recover the sum of one dollar as damages. From this judgment and an order refusing to grant a new trial, the defendant has appealed.

The Court found that the track laid down by the defendant next to the sidewalk adjoining the plaintiff's property was not a necessary switch or turnout, and that the same injuriously affects the plaintiff's said real estate, by lessening its market value one thousand dollars; "that said track prevents the comfortable egress and regress to and from said real estate, whereby plaintiff's personal enjoyment of said property is lessened; and the same is no part of the double track provided for in the Act granting the franchise. That said plaintiff has sustained damages by reason of the premises in the sum of one thousand dollars."

The evidence on the plaintiff's part failed to show that she had sustained any damage by reason of the construction and use of the switch, turnout, and side track adjoining her property, unless, as estimated by R. H. Sinton, a real estate dealer, who testified that said switch, turnout, and side track affected the value of the plaintiff's property, in his judgment, very injuriously as a residence or for any other purpose; that it constituted an obstruction preventing its free use, and that by reason of it the market value of the property was lessened at least one thousand dollars. On his cross examination, he said the track itself did not affect the free ingress and egress to and from the property, but that the use did when the cars were passing or standing there; that he did not know as the cars ever stood in front of plaintiff's property; that when the cars pass a carriage cannot stand there. The defendant objected to the question propounded to Sinton, in answer to which the above testimony on the direct examination was given, on the ground that the evidence sought to be elicited was incompetent and irrelevant, and to the overruling of the objection the defendant duly excepted.

The evidence on the side of the defendant was ample and explicit to the point, that the turnout and side track was necessary for the convenient operating of the road, and there is not in the statement the least evidence to sustain the finding to the effect that the same was unnecessary. The Act of 1862 provided that the road should have a single or double track, at the option of the company, with the proper and necessary switches and turnouts along the entire route. (See, also, Railroad Act of 1861, Sec. 17, Subdivisions 3 and 4, Hittell's Gen. Laws, 842.)

The plaintiff's counsel has suggested that the authorities are opposed to the proposition that the Legislature had the power to grant the right to lay down and construct a railroad upon the streets named in the Act, without providing for compensation for damage thereby to the owners of property along the line of such streets. This may be so, provided it be conceded that the owners of property along the line of the streets are also owners of the contiguous land *usque ad filum viae.* That the plaintiff owned the land on which the superstructure of which she complains was placed, she has not by her complaint pretended. Nor was there any evidence produced tending to establish her title to the land to the centre of the street; but, on the contrary, the facts agreed upon relating to the subject negative any such hypothesis. Hence, the only conclusion to be reached upon this point is, that the plaintiff had no title to the soil of the street adjoining her lot, and, consequently, no case existed demanding compensation for the appropriation of it for the purposes of the railroad. (*Drake* v. *Hudson River Railroad,* 7 Barb. 508; *Williams* v. *The New York Central Railroad Co.,* 16 N. Y. Rep. 101.)

The Act of 1862, as we have seen, authorized the grantees of the railroad franchise and their assigns to construct upon the line of the route described, proper and necessary switches and turnouts. Then the laying down of the switch, turnout, and side track, and the use of it, was the exercise of a lawful right, for which the defendant would not be liable (unless

guilty of some misconduct or negligence) for any consequential injuries which might result therefrom to one who owned property adjoining the work. The railroad company must be regarded in relation to the particular portion of the street on which the switch, turnout, and side track were placed, as the rightful occupant thereof, and therefore, the liability of the company for any consequential injuries to the plaintiff could only arise in case of the exercise of the right and power granted without due care and skill, or for some misconduct or negligence on the defendant's part.

The grievance complained of, the plaintiff says, results from an obstruction placed in the street adjacent to her property, consisting of a " side track," used by the defendant for its accommodation for cars to stand upon when not in actual use in transporting passengers, and which the plaintiff says was not a necessary switch or turnout. There were several witnesses who testified on the part of defendant that the switch-turnout and side track were necessary. These several witnesses were persons whose business qualified them to judge of the wants and necessities of the railroad company, and of the public convenience in respect to the matters of which they testified. Besides this, we apprehend the presumption of law to be that the switch, turnout, and side track·were necessary and proper, and that the burden was upon the plaintiff to establish her averment to the contrary. To prove such averment the plaintiff offered no evidence whatever. Hence the Court was not justified in finding the fact as alleged by the plaintiff.

The mere consequential disadvantages of a street railroad to a particular locality cannot be the subject of a private action. Its proximity to a particular parcel or lot of land may affect the value of such property, either to its advantage or disadvantage. But the company can claim no compensation for the enhanced value consequent upon the improvement; nor can the owner claim compensation for any depreciation which may result to the property because of the construction of the road in its vicinity. For such accidental

disadvantage the party is without remedy.    The consequential detriment to the property in such case must be regarded as *damnum absque injuria.*    We are of the opinion the evidence showed beyond reasonable question that the company were authorized to lay down the switch, turnout, and side track mentioned, and to use it for the purposes of the railroad enterprise, and we think the Court erred in deciding such turnout and side track to be a private nuisance.    (*First Baptist Church* v. *Utica and Sch. R. R. Co.*, 6 Barb. 315 ; *Radcliff* v. *Mayor, etc. of Brooklyn*, 4 Comst. 197 ; *Chapman* v. *Albany and Sch. R. R. Co.*, 10 Barb. 362 ; *Williams* v. *New York and Central R. R. Co.*, 18 Barb. 242 ; S. C. N. Y. Rep. 100 ; *People* v. *Kero*, 37 Barb. 418 ; *Davis* v. *Mayor of New York*, 14 N. Y. 522–524 ; *Mason* v. *P. and Ft. W. R. R. Co.*, 21 Ill. 516 ; *N. A. and S. R. R. Co.* v. *O'Daily*, 12 Ind. 551 ; *Morris and E. R. R. Co.* v. *City of Newark*, Stock. Ch. 359.)

The evidence of Sinton estimating the damage to the plaintiff's property by reason of the side track adjoining and its use by the defendant we hold was both incompetent and irrelevant, and the same should have been excluded, for the reason that it appeared the defendant, in placing the switch, turnout, and side track there, and using it afterward, was thereunto authorized by the Act of the Legislature. Such evidence could not become competent and relevant until other evidence was produced showing that the turnout and side track were not proper and necessary, and consequently that the occupation and use of the street in front of plaintiff's property by such turnout and side track were not authorized by the Act of 1862, and therefore amounted to a private nuisance.

Judgment reversed and a new trial ordered.

Mr. Justice SANDERSON delivered the following dissenting opinion, in which Mr. Justice RHODES concurred:

I am of the opinion that the side track of which the plaintiff complains is not a "turnout" within the meaning of the defendant's charter; and, furthermore, if it be conceded that it is a "turnout" within the meaning of the charter, that it is not, in the light of the evidence, a "necessary turnout." For these reasons I dissent from the judgment of the Court.

A rehearing having been granted, Mr. Chief Justice SAWYER delivered the following opinion of the Court, at the April Term, 1868:

A rehearing having been granted in this case, the most important questions now argued, are, whether the track complained of is a switch and turnout within the meaning of the Act granting the franchise. (Stats 1862, p. 412, Sec. 1.) And, if so, whether it is proper and necessary? The second definition of the word "turnout," in the last edition of Webster's Dictionary, is, "A short side track on a railroad, which may be occupied by one train while another is passing on a main track; a shunt, a siding." And a "shunt" is defined, "A turn-off to a side or short rail, that the principal rail may be left free." Now, the track in question exactly fills these definitions. It is a short track at the side of the main track, and connected with it by a switch, and used for the cars from the "Lone Mountain" branch of the road to run upon, and stand in front of the company's office, while the cars on the main road, running to Brannan street, pass and stop to allow the passengers going towards or from Lone Mountain to change cars. Potter, an engineer acquainted with the meaning of terms pertaining to railroads, testifies that "this is a switch, turnout, or side track; the three constitute a turnout." And other engineers and witnesses agree with him. There is no testimony to the

contrary.  And it is manifestly a switch and turnout within the meaning of the term, as used in the Act.  In our judgment, also, the uncontradicted testimony shows that it is a proper and necessary turnout, within the meaning of the Act. These terms are not to be construed with great rigor, excluding everything that could by possibility be dispensed with. They are to have a reasonable construction, for the purpose of accomplishing the objects for which the franchise was granted.  This object is the accommodation of the traveling public.  And it is manifest from the testimony, in connection with the diagram, that travelers are best accommodated by the Lone Mountain car coming up at the junction, and stopping on the side track in front of the company's office, while the car on the principal route comes up on the main track and stops for the convenience of change of cars.  This change might doubtless be effected at the crossing of the streets, but less conveniently to passengers, while the stoppage of the cars in the crossing of two streets would obstruct the other travel of two streets, instead of one.  There is no conflict in the evidence, and the only question is, what does it show? To our minds it is clear that the turnout is proper and necessary, within the meaning of the terms of the Act, and is, upon the whole, as well located as it could well be with reference to the general accommodation of the public, and that it is authorized by the Act.  The other points, so far as they require notice, are discussed in our former opinion, and we see no reason for changing the views there expressed. We think the judgment and order denying a new trial should be reversed and a new trial had, and it is so ordered.

Mr. Justice SANDERSON dissented.

Mr. Justice RHODES did not express an opinion.