[L. A. No. 319.    In Bank.—March 25, 1898.]

## MATILDA G. BANCROFT, Respondent, v. CITY OF SAN DIEGO, Appellant.

MUNICIPAL CORPORATIONS—CHANGE OF GRADE OF STREET—DAMAGE TO ABUTTING LOT—STREET RAILROAD.—In an action against a municipality to recover for damages alleged to have been occasioned to a lot of the plaintiff by reason of a change in the grade of a street upon which it abuts, the estimate of the damage should be made by considering the value and condition of the lot as of the time the work of changing the grade was done, and not as of the time the ordinance changing the grade was passed; and if, between such times, a street railroad, in pursuance of a requirement of its franchise, lays its

tracks on the official grade, the damage thereby occasioned the lot cannot be recovered in such action against the municipality.

ID.—CITY NOT LIABLE FOR WORK OF RAILROAD.—A municipality is not liable to an adjoining proprietor for damage occasioned his lot for work done by a street railroad, acting under a franchise derived from the city, in laying its tracks upon the official grade as required by its franchise. For such damages the railroad is alone liable.

ID.—SAN DIEGO—CLAIMS FOR DAMAGE—PRESENTATION TO COMMON COUNCIL.— The city of San Diego cannot be held liable in an action against it to recover damages occasioned an adjoining proprietor from a change of the grade of the street, unless the claim for damages has been presented to the common council within six months after the occurrence from which the damages arose, as required by section 10, chapter 2, of article 2 of its charter. (Stats. 1889, p. 658.)

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

H. E. Doolittle, and T. L. Lewis, for Appellant.

M. A. Luce, for Respondent.

TEMPLE, J.—This action is for damages suffered from a change in the grade of a street upon which plaintiff's property abuts.

In the complaint it is alleged that plaintiff owns block 227 in Horton's addition to the city of San Diego, which block abuts on Fifth street for the entire distance between Fir and Elm streets. In 1887 the city established a grade to said street in front of plaintiff's block, and thereafter the street was graded to said grade. The result of the grading was that plaintiff's property was in a hollow or depression, varying from two to twenty feet below the street. It is then charged that afterward, on the 10th of October, 1889, the city by ordinance changed the official grade of the street, raising the same from one and one-half feet to three feet in front of plaintiff's property. On the 5th of August, 1893, the city, after proper proceedings, ordered the street to be graded to the newly established grade, and awarded the contract for the work to one Goodbody, who entered upon the work in January, 1894, and raised the street to the grade so estab-

lished. It is alleged that thereby the said block of plaintiff was damaged to the extent of three thousand dollars.

In the second count or statement of a cause of action plaintiff avers ownership of the half of block 228, which fronts on Fifth street, and is on the east side of Fifth street, opposite block 227. By allegations in every way similar to these already noticed, it is averred that this property has suffered damage to the extent of two thousand five hundred dollars.

For a defense the defendant denied that plaintiff has been damaged, but avers that by the said grading the property of plaintiff was benefited and greatly enhanced in value.

For a special defense it is averred that the plaintiff's claim for damages was not presented to the common council nor filed with the city clerk within six months after the occurrences from which her damages are alleged to have arisen.

It is also alleged that plaintiff's claim is barred by subdivision one of section 339 of the Code of Civil Procedure.

In general, the court found the facts to be as alleged in the complaint and assessed the damages under the first cause of action at four hundred and sixty-eight dollars and seventy-five cents, and under the second cause of action at three hundred and sixty-four dollars and fifty cents.

There was a finding, however, as to each cause of action, that the claim for damages was not presented to the common council, nor filed with the city clerk within six months after the occurrences from which said damages are alleged to have arisen. In fact, as shown by the evidence, neither claim was ever presented or filed.

The appeal is from the judgment and from the refusal to grant a new trial.

The appellant makes three points: 1. The evidence does not show that plaintiff has been damaged; 2. If plaintiff has suffered damages, the city is not liable; and 3. The claim for damages not having been presented or filed, the suit cannot be maintained.

I think the first point must be sustained; not because there was not testimony that, in the opinion of some of the witnesses, the property of plaintiff had been damaged by the change of grade, but because it is evident that the witnesses based their estimates upon a mistaken view of the issues to be determined. Although

the ordinance changing the grade was passed in 1889, the con-
tract for doing the work of changing the grade was not let until
October, 1893, and the work was not completed until January,
1894.   But in the summer of 1892 a street railroad company
laid its track along Fifth street in front of plaintiff's property
and constructed a roadbed twenty-three feet wide on the new
grade.   The railroad corporation had a franchise from the city
granting them the right to construct and operate their street rail-
way, and requiring them to place all their tracks on the official
grade.   It was, and is, claimed by the plaintiff that the city is
liable for the injury which resulted from the work done by the
street railroad corporation, because it only raised the street to the
official grade as it was required to do in its grant of a franchise.
The witnesses for the plaintiff evidently estimated the damages
by comparing the value of the property before the street was
interfered with by the railroad company, with its value after the
grading was finished by the city, as though the city had done
all the work of grading and was responsible, and could be held
in this action for the change made by the railroad company.

Conceding for the moment that the city could be held for
damages resulting from the construction of the street railroad,
plaintiff cannot recover for such damage in this action: 1. Be-
cause the right to sue for damages so resulting was barred by the
statute of limitations when this action was commenced, and the
limitation is pleaded as a defense; and 2. Because this action was
not brought to recover such damage.   The action is expressly
based upon the alteration in the street made by the city, through
its contractor, D. J. Goodbody.   For the damages caused by the
work previously done by the railroad company, if any, the plain-
tiff had a right of action against that company, and, if the city
was also liable, against the city, as soon as the work was done.
Such damages could not have been proven in this case, in the
face of the plea of the statute.   The witnesses should then have
been questioned as to the difference between the value of plain-
tiff's property as it existed when Goodbody commenced work,
that is, with the roadbed made by the street railroad company
upon the street.   Plaintiff's witnesses do not seem to have been
questioned as to the damages upon any such state of facts.

But I do not concede that the city would have been liable, if

the suit had been brought in time, for the injury to plaintiff's land resulting from the work done by the railroad company.

This court held in *Eachus v. Los Angeles,* 103 Cal. 614, that the city is not made liable by the ordinance establishing the grade. Also, that a street railroad company which does the work in order that it may lay its track upon the official grade as required by its franchise, is liable to the lotowner for such damage.

Two different theories upon the subject seem to find favor with the courts, as indicated by the authorities cited by respondent. In Missouri (*Sheehy v. Kansas etc. R. R. Co.,* 74 Mo. 574) it seems to have been held that both the city and the private corporation were liable for such damage, and it was said that the company "takes the privilege yoked with a liability." On the other hand, it was held in *Interstate Rapid Transit Co. v. Earley,* 46 Kan. 197, that the city only was liable for work done by the private corporation under such circumstances.

It was said of the private corporation: "It holds a position, as it were, of a contractor for the city, . . . . the railway company ought not to be held liable because the city failed to grade the street to its full width at the time the company constructed and put in operation its railway." If the private corporation is a contractor or the agent of the city in doing the work there is no logical objection to the conclusion reached by the Kansas court. And there is much plausibility in the position. The damage does not result from an unlawful act.

The necessity of doing the work on the part of the railway company is created by the condition of their franchise, and this also is its warrant for doing the work. But for this its acts in the matter would be unlawful, and the company liable as a trespasser. The damages are the consequence attached by the constitution and laws to the performance of a lawful act by which private property is burdened with a public use. Formerly, loss so occasioned did not give rise to an action. It was said to be *damnum absque injuria.* This burden is not put upon private property by the railway company, but by the city. The private company can be held only upon the idea that the franchise is granted upon the condition that, when it becomes necessary for the company to raise or lower a street to place its track upon the official grade, it assumes the liability. "It takes the privilege yoked with the liability."

This is, I think, the true theory, and is fair and just to all parties. As said in *Eachus v. Los Angeles, supra,* no liability on the part of the city is created by the ordinance establishing the grade. Ordinarily, the grade must be established at the same time over many streets, in order that they may be so related to each other as to permit drainage. A system must be established throughout a district. It does not follow, however, that all the streets must be actually graded at once, and the municipality does not thereby undertake that they ever will be actually graded. When, therefore, a street railway company for its own pecuniary advantage lays its track upon streets which the city is not prepared to grade, and perhaps will never have occasion to construct, it is but just that the railway should assume the liability for such work, and it was so held in *Eachus v. Los Angeles, supra,* although the question was not there directly involved.

I see no reason for holding that the railway is in any sense the agent of the city in the work. The grant of the franchise did not impose upon the company the duty of cutting down or filling up a street. It may do so or not as its interests prompt. And when it changes the grade for its own purpose it must necessarily be at a point where the city has not found it necessary to construct the street or actually change the grade, and has not in the statutory mode declared its intention of doing the work. In the present case, the railway company did not construct a street, but, on the contrary, it ruined the street which had been already made. It disregarded the interests of the city altogether, constructing only its railway for its own purposes and to make a profit for its stockholders.

The second point made is, that the city is not responsible for damages, even for those resulting from its own work in changing the grade. The street is in Horton's addition to the city of San Diego; Horton, owning the tract of land, caused it to be laid out in blocks and streets, and sold it in lots according to a map made by him. It is contended that the dedication of the streets implied the right to construct a roadway over them. Otherwise, such a dedication would be equivalent to saying, "I give you these strips of land for streets, but I will sue you for damages if you make that use of them," for it might be necessary to grade the streets before they could be so used. Such a dedication might prove a Greek gift, more costly than any purchase.

The question has been variously decided, and is somewhat discussed in *Eachus v. Los Angeles, supra.* It is only material here in case of a new trial.

As we have seen, the plaintiff's claim was never presented to the city council for allowance, nor filed with the clerk or with the secretary of the auditing committee. Upon this subject the charter contains the following provisions: Every officer authorized to audit and certify demands may administer oaths to witnesses and hear testimony in regard to any matter connected with the claim. (Stats. 1889, p. 726.)

Section 10, chapter 2, of article 2 of the charter (Stats. 1889, p. 658) reads as follows: "All claims for damages against the city must be presented to the common council and filed with the clerk within six months after the occurrence from which the damages arose."

In addition to these provisions, the charter creates an auditing committee who shall examine, allow, and order paid, or reject and disallow all bills and claims of whatever nature (except salaries), and require all claims and demands (except salaries) to be verified and filed with the auditing committee, whose duty it is made to allow or reject the same in whole or in part. (Stats. 1889, p. 704.)

The contention of respondent is, that the word "audit" is not applicable to a demand for damages arising from a tort; that the committee can only determine whether the claim has already been allowed by the council, or is a demand fixed by law which is payable without being so allowed, or at the most a demand arising upon a contract made by the city, in which the amount has been fixed and where performance may be shown by vouchers. Many authorities are cited in support of this position. But, like other statutes, each charter must be construed by its own terms. This charter expressly requires all claims for damages to be presented within six months, not to an auditor or auditing committee, but to the legislative body of the city. Coupled with the other provisions which expressly require the presentation of all claims and demands and authorize the auditing committee to take testimony, and upon that to reject or allow, there can be no doubt as to the policy adopted in this charter.

But it is argued the charter does not say that no action shall

be brought unless the claim is so presented, nor is there a limitation as to the right to sue. To hold that the city may be sued upon such demand after the expiration of six months, the demand not having been presented, would be to hold that, notwithstanding the charter, such demand need not be presented. I can imagine no motive for the requirement unless a failure to so present the demand is fatal. If the law had read, "Claims must be presented within six months, but a failure to so present them shall not affect their validity," we should have been at a loss to understand the purpose of the law. It would have been a self-professed absurdity. I think the implication that a failure to present a claim is fatal to it is as plain as would have been an express declaration to that effect.

It is then said that the point was not raised in appellant's points. This is a mistake. The point is raised, but through carelessness, or for some other reason, appellant's counsel cited the wrong provision of the charter in support of it. This error of citation was not corrected until the reply brief was filed.

The answer distinctly makes the point, pleading the objection that the demand had not been presented to the city council or filed with the clerk. The attorneys who drew the answer had certainly read the charter. The attorneys who filed the points and authorities overlooked this most essential requirement, but made the point distinctly, though relying upon a section which, if standing alone, would have left the question in some doubt. It is not, however, a new point raised for the first time after the points and authorities were filed.

The judgment and order are reversed, and the cause remanded.

Henshaw, J., Garoutte, J., and Harrison, J., concurred.

Van Fleet, J., concurred in the judgment upon the last ground stated in the opinion.