[L. A. No. 9938. In Bank.—June 26, 1929.]

CRESCENT WHARF AND WAREHOUSE COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

O'Melveny, Milliken & Tuller and William W. Clary for Appellant.

Jess E. Stephens, City Attorney, Clyde M. Leach, Assistant City Attorney, and Joseph T. Watson, Deputy City Attorney, for Respondent.

SEAWELL, This appeal is taken from a judgment of dismissal entered upon demurrer sustained without leave to amend. The demurrer was based upon general grounds and upon the more specific ground that the alleged claim sued upon was not presented to the defendant City of Los Angeles "within six months after the occurrence from which the alleged damages arose or within six months after the claim accrued," as provided by the charter of said city.

The property involved has its *situs* at and upon San Pedro Bay, city and county of Los Angeles, and is a part of the tidal lands held in trust by the City of Los Angeles for the use and benefit of the people of the state. Said property alleged to have been taken and actually physically destroyed by plaintiff without compensation therefor having first been made and to recover which compensation this action was commenced, as hereafter described, was granted to said City of Los Angeles by act of the legislature May 1, 1911. (Stats. 1911, p. 1256; see, also, *People* v. *California Fish Co.*, 166 Cal. 576 [138 Pac. 79].) The complaint segregates or classifies said property as follows:

1. A wharf 304.75 feet in length, situate on leased property; 2. A certain leasehold estate arising from a lease executed by Los Angeles and Salt Lake Railroad Company, a corporation, as lessor, and appellant herein, as lessee, dated December 23, 1901, for a term of fifty years; 3. All rights, interest and privileges granted to appellant by virtue of an ordinance adopted by the board of supervisors of the county

of Los Angeles January 22, 1904, for the term of twenty years, beginning February 15, 1904, which ordinance authorized appellant to construct a wharf upon lands fronting upon and extending into the waters of San Pedro harbor and to collect and take tolls thereon during said term of twenty years.

It will not be necessary to determine whether appellant, at the time respondent caused said wharf to be destroyed as an incident to the dredging and widening of the main channel of San Pedro harbor, owned any interest in or right to said wharf or the soil upon which said wharf had its support, for the reason that no demand was presented to said city sooner than two years and eleven months after the claim for money or damages accrued. Plaintiff alleged that during "the months of June, July, August and September, 1923, defendant took the property of plaintiff . . . and appropriated it for public use, namely, for widening the main channel of San Pedro Harbor." No demand was made upon said City of Los Angeles until August 3, 1926, on which day a demand in writing was made for the payment of the sum of $40,445.35. Thirteen days thereafter the demand was disallowed *in toto.*

Section 376, Los Angeles city charter, contains the provision with which appellant failed to comply. It reads as follows:

"No suit shall be brought on any claim for money or damages against the City of Los Angeles, or any officer or board of the city until a demand for the same has been presented as herein provided, and rejected in whole or in part. If rejected in part, suit may be brought to recover the whole. Except in those cases where a shorter period of time is otherwise provided by law, all claims for damages against the city must be presented within six (6) months after the occurrence from which the damages arose, and all other claims or demands shall be presented within six (6) months after the last item of the account or claim accrued."

Appellant takes the position that since its right to compensation springs directly from the constitution (art. I, sec. 14) it cannot be barred by any charter provision or any statute of limitation short of the period required by law for acquiring property by adverse possession.

Such a claim can only find support upon the theory that the guaranty of the constitution to the citizens that the state or its agencies may not take or damage private property for public uses without making provision for the just compensation therefor to the owner, as provided by said article I, section 14, state constitution, *ex proprio vigore,* immunes the owner of property so taken from the bar of the statute of limitations, and perhaps other statutory requirements, which affect the investment and divestment of title to real property generally. A distinction is assumed to exist as to the extent and stability of property rights conferred by statutes and those conferred by the express mandate of the constitution. ■ In order to accept appellant's conclusion it is necessary to start with the premise that a property right which arises from the express command of the constitution vests a right or title in the grantee superior to any right or title that may be founded upon statute in the absence of such a constitutional pronouncement. The constitution does not attempt to make a distinction between the ownership of property acquired by any of the methods provided by law and there is no such thing as degrees of security by which real property shall be held and enjoyed. ■ All that the framers of the constitution meant to do was to protect the citizen in his ownership of property against the state or its agencies appropriating private property to public uses against the will of the owner without making just compensation for all damages which the owner should sustain by the exercise of governmental power. It was not intended to remove the subject matter beyond the operation of reasonable statutory enactments which affect property rights generally, such as the bar of the statute of limitations.

Appellant has cited decisions of other jurisdictions which have given expression to the doctrine that where land is taken under the right of eminent domain "there can be no doubt about their (owners') right to recover the damages sustained, if the same have not been paid, for no statute of limitations can bar their constitutional right to actual compensation for the land so taken from their ancestor . . . " (*Carter* v. *Ridge Turnpike Co.,* 208 Pa. 565 [57 Atl. 988].) In the state of Pennsylvania a rule of evidence obtained to the effect that after the lapse of twenty years from the time

the damages accrued it would be presumed that said damages had been paid. Included in the list of cases relied upon by appellant—most of which are within the jurisdiction of Pennsylvania—are *McFarlan* v. *Morris*, 44 N. J. L. 471; *Faulk* v. *Missouri River etc. R. Co.*, 28 S. D. 1 [Ann. Cas. 1913E, 1130, 132 N. W. 233]; *Clark* v. *Water Commissioners*, 148 N. Y. 1 [42 N. E. 414]; *Kincaid* v. *City of Seattle*, 74 Wash. 617 [134 Pac. 504, 135 Pac. 820]. To this list may be added the most recent case decided by the Washington state supreme court, *Wong Kee Jun et ux.* v. *Seattle*, 143 Wash. 479 [52 A. L. R. 625, 255 Pac. 645]. The case last cited is the latest in point of time (1927) which may be offered in support of appellant's contention. Because of a condition of confusion and uncertainty existing in the law of that state a review of all former decisions was made as to whether damages for injury to private property caused by the improvement of a highway, if there is in fact an exercise of the power of public domain, could be limited to such damages as accrued within the time limited by the municipal ordinance for giving notice of claims. In that case the plaintiffs sought to recover damages to their real property caused by a slide resulting from the removal of lateral support by the city in its regrade of certain adjacent streets some years before the action was commenced. The question whether the plaintiffs were limited, as prescribed by the city charter, in their action for damages to such damages only which may have been sustained within a period beginning thirty days prior to the filing of the claim, was decided in the negative and a charter provision requiring the presentation of a claim as a prerequisite to bringing said action was held to be inoperative. The holding of the courts upon which appellant relies as authority for its contention is that a claim for "compensation" or for "damages" to the owner of real property resulting from an appropriation of his property is in its nature the price of the land taken and is not an ordinary contract claim and, therefore, the claimant may not as a condition precedent be required to present it to the city and to require the claimant to do so is a violation of the constitutional provision that private property shall not be taken for public use without just compensation first being made to its owner; that the city does not go upon the lands as a trespasser. Having the right to take, a municipality is neither a

trespasser nor a tort-feasor in the absence of some act· of negligence committed in the prosecution of public works. It is further contended that the right to compensation .is not dependent upon an implied promise to· pay, a doctrine which we think is not only contrary to the great weight of authority as expressed in the decisions of the Supreme Court of the United States, notably *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645 [28 L. Ed. 846, 5 Sup. Ct. Rep. 306], and many subsequent decisions, and in the decisions of various state courts, but also contrary to the fundamental principles of the rules of equity. ▮ When a state constitution such as ours provides neither the mode for the taking nor for the payment of private property the mode of procedure may be provided by either statutory or charter provisions. The following quotation taken fom 16 Cal. Jur. 396, 397, is supported by the decisions of this state:

''The power to impose reasonable periods of limitation is unquestioned, for a statement of a right in a constitution is always subject to reasonable statutory limitations of the time in which such right may be enforced, unless the constitution itself declares otherwise. The legislature may prescribe the different periods of time within which different species of obligations may be enforced and may prescribe that as to some obligations there shall be no limitation of time. And it has been said that it is competent for the legislature to declare that there shall be no limitation of time against the enforcement of any obligation of a foreign corporation; its declaration that upon the failure to file a designation of a person upon whom process may be served, the corporation shall be denied the benefit of the statute of limitations is only an exercise of this power. The time for presenting claims against municipalities may be prescribed by their charters.''

The case of *Bancroft* v. *City of San Diego*, 120 Cal. 432 [52 Pac. 712], is not only in point on the question urged by appellant, but it is peculiarly applicable for the reason that it arises out of the same situation found to exist in the cases relied upon by appellant. Mrs. Bancroft owned property in the city of San Diego fronting on a street which suffered damages by reason of· the changing of the street grade. She failed to present a claim for damages to the common council within the six months' period prescribed

by the city charter or at all. The *policy* of a charter adopting a six months' period in which claims for damages to property, which. is in a sense a taking of the property, is held to be beyond question. The reason for the rule was thus stated by Mr. Justice Wilbur in *Western Salt Co.* v. *City of San Diego,* 181 Cal. 696 [186 Pac. 345]:

"The reason for this type of legislation, requiring claims to be first presented to the legislative body of a city or county before suit is brought is thus stated in an early case in this state: 'We think the intention of the legislature was to prevent the revenue of the county from being consumed in litigation by providing that an opportunity of amicable adjustment should be first afforded to the county before she could be charged with the cost of a suit.' . . . This reason applies with like force to all claims against a city, however, originating.

"It is, however, claimed that this provision of the charter is invalid for the reason that the freeholders' charter conflicts with the general law, and is only supreme in 'municipal affairs.' . . . This contention is predicated upon the proposition that by the general law a complaint for damages is a sufficient presentation of a demand against an individual or private corporation. The question involved here, however, is an entirely different one namely, the method of securing payment of claims against a municipality, an agency of the state. There is no general law upon that subject, but the charter of each municipality prescribes the method for such payment. The charter controls, and, as plaintiff has failed to present his claim for damages within the time provided by the charter, the demurrer was properly sustained."

We may add to what is above said that it is important to municipalities in making preparations for carrying cities through each fiscal year to be informed within a reasonable time in advance as to the indebtedness or liability that they are expected to meet. Otherwise claims which should have and could have been provided for had a demand been made within a reasonable time after liability had accrued may accumulate to the disadvantage of the claimant as well as to the financial embarrassment of the city. The policy of such ordinances is sound as applied to the affairs of municipalites, and there can be no constitutional objection to the enactment of charter provisions which require de-

mands to be presented within a reasonable period after their accrual.

Other cases of this jurisdiction which sustain the ruling of the trial court are: *Bigelow* v. *Los Angeles,* 141 Cal. 503 [75 Pac. 111] ; *Spencer* v. *Los Angeles,* 180 Cal. 103 [179 Pac. 163] ; *Metropolitan Life Ins. Co.* v. *Rolph,* 184 Cal. 557 [194 Pac. 1005].

Judgment affirmed.

Richards, J., Shenk, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.