[L. A. No. 15445. In Bank.—December 31, 1935.]

ALMA A. NORTON et al., Plaintiffs and Appellants, v. CITY OF POMONA (a Municipal Corporation), Respondent; SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Appellant.

Kelley & Hews and Joseph Seymour for Plaintiff and Appellant.

Roy V. Reppy, B. F. Woodard and E. W. Cunningham for Defendant and Appellant.

Alfred Sutro, Samuel L. Wright, Pillsbury, Madison & Sutro, Thomas J. Straub and W. H. Spaulding, as *Amici Curiae* on Behalf of Defendant and Appellant.

Charles R. Stead for Respondent.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Leon Thomas David, Deputy City Attorney (Los Angeles), Harold Huls, City Attorney (Pasadena), and Bernard Brennan, City Attorney (Glendale), as *Amici Curiae* on Behalf of Respondent.

THE COURT.—A hearing was granted in this case in order to consider more fully the contention of defendant Southern California Edison Company, Ltd., that it could not be deemed negligent in maintaining its power pole in a location approved by public authority. The same point was involved in *Gerberich* v. *Southern California Edison Co.*, L. A. 14528 (*ante*, p. 46 [53 Pac. (2d) 948]), this day decided, and we there approved the holding of the District Court of Appeal. In conformity with the conclusion reached therein, we hereby adopt the following opinion of Mr. Justice *pro tem.* Willis as the opinion of this court:

"There are two appeals herein. One is by defendant Southern California Edison Company, Ltd. (hereinafter referred to as 'Edison Company'), from a judgment for damages in favor of plaintiffs Alma A. Norton and Ed. Norton, wife and husband, for injuries to person and property resulting from a collision of their automobile with an electric power and light pole erected and maintained by the Edison Company in the parkway near the corner of a street in the City of Pomona. The other is by plaintiffs from a judgment in favor of defendant City of Pomona, a municipal corporation.

"Plaintiffs commenced the action on December 31, 1931, and by their second amended complaint sought to charge defendant City of Pomona with maintaining a public street in a dangerous or defective condition, and charged both defendants with negligence in maintaining an electric power and light pole at a place on said dangerous and defective portion of said street in a dangerous and unguarded position thereon, as a result of which plaintiffs, without knowledge on their part of such dangerous condition, drove their automobile into and collided with said pole, causing the damage complained of. After trial before the court without a jury the cause was, on April 14, 1933, ordered submitted on filing of briefs. On June 2, 1933, the court made its minute order for judgment

in favor of plaintiffs and against defendant Edison Company for $6,065 damages, and in favor of defendant City of Pomona. The record fails to show that findings were waived. On June 23, 1933, plaintiff Ed. Norton died by his own hand, and on July 24, 1933, letters testamentary were issued to Alma A. Norton as executrix of his estate. On August 22, 1933, plaintiff Alma A. Norton, individually and as executrix of the estate of Ed. Norton, moved the court for an order to file findings and judgment in the case *nunc pro tunc* as of the date of June 2, 1933. On November 1, 1933, the court granted the same and on the same date signed and filed its findings and conclusions and the judgment herein appealed from, which judgment was entered by the clerk on November 6, 1933, *nunc pro tunc* as of June 2, 1933, pursuant to the order of court so to do, incorporated in the judgment. On November 10, 1933, Alma A. Norton, as executrix, was substituted in the place and stead of Ed. Norton as plaintiff, the defendants reserving all objections to entry of the findings and judgment *nunc pro tunc* as of June 2, 1933. On November 14, 1933, Alma A. Norton and Alma A. Norton as executrix filed notice of appeal from the judgment in favor of City of Pomona only, and on November 15, 1933, defendant Edison Company filed its notice of appeal from the judgment against it.

## "Appeal of Edison Company.

"On this appeal it is urged (1) that the fact established by the undisputed proof that the pole was in a parkway of a public street and there maintained under governmental authorization, was a complete defense as a matter of law, inasmuch as it showed that the maintenance of such pole did not constitute a nuisance; (2) that the company was not guilty of any negligence in the maintenance of said pole; (3) that plaintiffs were guilty of contributory negligence as a matter of law; and (4) that the action abated upon the death of the husband, Ed. Norton, and that it was error to order judgment in favor of plaintiffs *nunc pro tunc* as of a date prior to his death, and particularly in favor of said deceased plaintiff.

"To apprehend the nature and significance of the problems presented on both appeals herein it is necessary to reproduce the scene and circumstances of the accident in some detail. At the time of the accident Fifth street in the City of

Pomona ran east and west, and in its course intersected San Antonio avenue at right angle, both being public streets of said city. West of the intersection Fifth street was 100 feet wide between property lines and 68 feet wide between curb lines, and was paved and used from curb to curb. East of the intersection Fifth street was 70 feet wide between property lines and 46 feet wide between curb lines, the reduction in width being approximately 11 feet on each side, the portion between curb lines being paved and generally used for vehicular travel. On the southeast corner of this intersection there was a curb erected, forming a rounded corner and thence proceeding along the respective streets, the street pavement on the one side and the ground level on the other side being even with the top of the curb. The 12-foot space between property line and curb line at this corner, on the south side of Fifth street, consisted of earth filled to the curb level, with no sidewalk constructed thereon.

"At a point on the property side of the curb on the south side of Fifth street, and flush with the curb, there stood in a vertical position an ordinary electric light and power pole, about twelve inches in diameter near its base, its west surface being about 16 feet from the easterly curb line of San Antonio avenue, being unpainted and of a neutral color, with no lights or warning signs thereon. The pole in question had been erected and was maintained by the Edison Company under constitutional franchise and under an ordinance of the City of Pomona adopted under authority of the Broughton Act (Act No. 2720, Deering's Gen. Laws, p. 1244), by the terms of which the company was given the right to select the place of location of its poles along the property side of curb lines and flush with said curb. At least two previous collisions of automobiles with this pole were shown by the evidence as tending to show the dangerous character of such pole. (*Gorman* v. *County of Sacramento,* 92 Cal. App. 656, 664 [268 Pac. 1083].) The space between the curbs and property lines at this corner had in the past been used by the public in turning that corner, and the surface of such space up to the pole was clear and level with the curb and street pavement and in wet weather and darkness would present the appearance of a used highway.

"About eight o'clock on the night of January 1, 1931, plaintiffs drove their automobile eastward along the south

side of Fifth street, about eight feet from the curb, at a speed of ten or twelve miles per hour as it entered the intersection at San Antonio avenue, plaintiff Ed. Norton driving. It was raining and very dark, and the windshield of the automobile was obscured by moisture, a wiper working on the driver's side over a portion thereof. The headlights of the automobile were lighted but there were no lights on or near the pole nor at this intersection, except at a filling station at the southwest corner, and a small light on a gooseneck attached to the pole on the westerly side of the intersection. As the automobile entered the intersection plaintiffs were unaware of the narrowing of the street and a course was maintained in a straight line eastward, the wheels running over the level curb line on the easterly side onto the dirt space at the corner and directly against the pole above described. Both plaintiffs at the same instant saw the pole for the first time when some ten or twelve feet from it, when the driver put on the brakes but could not stop the car in time to avoid collision.

"On these facts above stated and substantially found by the trial court, it was also found 'that the erection, maintenance and permission of said pole at said time and place was negligently done and permitted by the defendant, Southern California Edison Company'; 'that said pole, so negligently placed and maintained, constituted a hazard to the travelling public and to plaintiffs herein', and that 'the negligent location and condition of said pole caused the automobile driven by the plaintiff, Ed. Norton, in which the plaintiff Alma A. Norton was riding, to run into and collide with the said pole'. The court further found that there was no contributory negligence on the part of plaintiffs, and that they had not filed any claim for damages with the legislative body of the City of Pomona, as required by the act relating to liability and damages of municipalities, etc., approved June 19, 1931, and in effect August 14, 1931. From these facts the court concluded that plaintiffs were not entitled to recover from the City of Pomona but were entitled to judgment against the Edison Company for $6,065.

■ "That the maintenance of the pole in the place and under the circumstances shown herein cannot be deemed a nuisance is settled by section 3482 of the Civil Code and decisions of our appellate courts, for nothing which is done

or maintained under the express authority of law can be deemed a nuisance. (*Carson* v. *Central R. R. Co.*, 35 Cal. 325; *Barry* v. *Terkildsen*, 72 Cal. 254 [13 Pac. 657, 1 Am. St. Rep. 55]; *Barrett* v. *Southern Pac. Co.*, 207 Cal. 154 [277 Pac. 481].) But while the erection and maintenance of the pole herein appear to have been authorized by ordinance, there still exists a liability on the part of the Edison Company for any consequential injuries arising from its negligence in exercising its right and power granted to erect and maintain poles within the City of Pomona. (*Carson* v. *Central R. R. Co.*, *supra*; *Barrett* v. *Southern Pac. Co.*, *supra*.)

■ "Herein plaintiffs sued upon the theory of negligence —not that of nuisance—and contend that the City of Pomona negligently permitted a dangerous and hazardous condition of a public street to exist, and that the Edison Company negligently maintained a pole in such dangerous place, the two acts concurrently operating to proximately cause the injuries to plaintiffs. In this case it became a question of fact for the court to determine whether under the circumstances shown the maintenance of the pole and the street, separately or together, constituted negligence on the part of either or both defendants (*Barrett* v. *Southern Pac. Co.*, *supra*), and whether such negligence, if any, proximately caused the injuries to plaintiffs, without contributory negligence on their part. ■ The evidence establishing the facts and circumstances herein is such that reasonable minds might draw different and opposite inferences both as to negligence and contributory negligence. The court found that the defendant Edison Company negligently erected and maintained the pole in the place shown, that such placing and maintaining constituted a hazard to the traveling public and caused the happening of the collision, and that there was no negligence on the part of plaintiffs contributing thereto. There was ample evidence to support the conclusions deduced therefrom by the court, and under the well-known rule these findings are binding and conclusive on this appeal and cannot be substituted by any of our own deductions.

"This disposes of the first three points presented by the Edison Company, and leaves for determination the question of the propriety and validity of the act of the court in filing its decision and judgment after death of plaintiff Ed. Norton,

*nunc pro tunc* as of the date of making its order for judgment on June 2, 1933.

■ "A cause of action founded on tort to the person, such as the instant action for personal injuries, does not survive the death of either the person to or by whom the wrong is done. This is the common law rule adopted by this state, and there is no statute changing the rule as affected by the situation herein. (*Clark* v. *Goodwin,* 170 Cal. 527 [150 Pac. 357, L. R. A. 1916A, 1142]; *Munchiando* v. *Bach,* 203 Cal. 457 [264 Pac. 762].) Hence the cause of action in favor of plaintiff Ed. Norton abated upon his death on June 23, 1933, unless such abatement was avoided by the action of the trial court in filing its findings and entering its judgment *nunc pro tunc* as of June 2, 1933, a date prior to his death.

■ "The power to enter judgments *nunc pro tunc* is inherent in the courts. Where the party is not at fault, the determinative consideration moving the court is whether or not the action at the death of the party was ready for rendition of final judgment. When the state of the record or the minutes kept by the court or clerk show that a suitor was entitled to a particular judgment but that the judgment was not entered when it might have been, such judgment may subsequently be entered so as to relate back to the time when it should have been entered, providing the delay was not occasioned by the party applying. ■ Such an order should be granted or refused as justice may require in view of the circumstances of a particular case. (*Estate of Pillsbury,* 175 Cal. 454 [166 Pac. 11, 3 A. L. R. 1396].) Notwithstanding sections 632 and 633 of the Code of Civil Procedure make it essential to a decision of a case tried without a jury and in which findings are not waived, that findings of fact and conclusions of law must be made and filed, the court has the same authority to order such findings to be filed *nunc pro tunc* as it has to order the judgment thereon to be so entered. The decision which the parties have invoked the court to make is not necessarily the statutory and technical 'decision' referred to in section 633, but it is the final determination of the rights of the parties and includes every step or act of the court which is requisite to a final judgment upon their rights. These rights are not to be prejudiced by the delay of the court in respect to any of these acts or proceed-

ings, and the court is authorized to direct the making or filing of its findings of fact and conclusions of law, as well as the entry of a judgment thereon, *nunc pro tunc* as of such date as will preserve them. Nor does section 669 of the Code of Civil Procedure, which provides for entry of judgment after death of a party on a verdict or decision before death, do away with the rule that authorizes the court to direct that its decision, so far as the same shall be necessary to protect the rights of the parties, shall be entered *nunc pro tunc* as of a day anterior to the death of a party. (*Fox* v. *Hale & Norcross S. M. Co.*, 108 Cal. 478 [41 Pac. 328]; *Leavitt*. v. *Gibson*, 3 Cal. (2d) 90 [43 Pac. (2d) 1091].)

 ''In view of the facts as revealed by the record herein, measured by the rules above stated and which were applied to a similar set of facts in the cases cited, we conclude that the trial court was fully justified in making and carrying out its *nunc pro tunc* order. This conclusion renders it unnecessary to consider the question of the effect of abatement as to one spouse by death upon the rights of the other in respect to community property represented by the cause of action.

*''Appeal by Plaintiffs.*

''On this appeal it is urged (1) that the evidence showed that defendant City of Pomona was guilty of negligence proximately contributing to cause the accident and injuries to plaintiffs by reason of the condition in which it maintained the street at the place of the accident, and (2) that failure to file a verified claim for damages with the legislative body of the city before filing suit does not preclude plaintiffs from a recovery. We will first determine the second point, as it logically comes first in order of consideration.

 ''In 1931 the legislature enacted, and on August 14, 1931, there became effective, an act which, in its principal parts, provided that 'whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building, park, grounds, works or property, a verified claim for damages shall be presented in writing and filed with such officer and the clerk or secretary of the legislative body of the municipality . . . within ninety days after such accident has occurred'. (Act No. 5149, Deering's Gen. Laws.) On the same day another act duplicating the lan-

guage above quoted, but with the words 'and/or negligence or carelessness of any public officer' inserted after the words 'works or property', went into effect. (Act No. 5150, Deering's Gen. Laws.) Act No. 5149 also contains a provision authorizing the municipality to compromise and pay any such claims. Act No. 5150 omits this provision. Nowhere in either act is there any provision requiring the filing of such claim as a condition precedent to commencing or maintaining action for the damages referred to. Nor does the charter of the City of Pomona contain any provision requiring the filing of such or any claims as a condition to maintenance of action thereon. (Stats. 1911, p. 1913.)

"To hold that it is not essential to file a claim in accordance with this statute before bringing suit would have the effect of rendering the statute nugatory, a meaningless and purposeless legislative gesture, permitting a claimant to file a claim only if he chose to do so. This conclusion finds convincing support in the decision of *Bancroft* v. *City of San Diego,* 120 Cal. 432 [52 Pac. 712], wherein the charter of the city in question provided that 'all claims for damages against the city must be presented to the common council and filed with the clerk within six months after the occurrence from which the damages arose'. In deciding the case the court said: 'But it is argued the charter does not say that no action shall be brought unless the claim is so presented, nor is there a limitation as to the right to sue. To hold that the city may be sued upon such demand after the expiration of six months, the demand not having been presented, would be to hold that, notwithstanding the charter, such demand need not be presented. I can imagine no motive for the requirement unless a failure to so present the demand is fatal. If the law had read "Claims must be presented within six months, but a failure to so present them shall not affect their validity," we should have been at a loss to understand the purpose of the law. It would have been a self-professed absurdity. I think the implication that a failure to present a claim is fatal to it is as plain as would have been an express declaration to that effect.' This decision was expressly approved in the later case of *Western Salt Co.* v. *City of San Diego,* 181 Cal. 696 [186 Pac. 345], wherein it was held that a general demurrer was properly sustained to a complaint against the city of San Diego, for damages suffered by reason

of the collapse of the 'lower Otay dam', which contained no allegation of prior presentation of 'a claim for damages.

"In the case of *Crescent City Wharf etc. Co.* v. *City of Los Angeles*, 207 Cal. 430 [278 Pac. 1028], in reviewing and approving the two cases above cited the court quoted with approval the following portion of the latter decision: 'The reason for this type of legislation, requiring claims to be first presented to the legislative body of a city or county before suit is brought, is thus stated in an early case in this state: "We think the intention of the legislature was to prevent the revenue of the county from being consumed in litigation by providing that an opportunity of amicable adjustment should be first afforded to the county before it can be charged with the cost of a suit." . . . This reason applies with like force to all claims against a city, however originating.' In view of the foregoing statement of the law we must assume that in its enactment of the act of 1931 the legislature took notice of the law as thus interpreted and announced, and deemed it unnecessary to express in terms that which the law would imply. The inclusion of the clause authorizing a compromise of such claims supports this assumption. It would therefore appear that the failure to file their claim before bringing suit would bar plaintiffs from recovering against the City of Pomona. ▮▮▮ But plaintiffs contend that inasmuch as the accident happened some eight and one-half months before the effective date of this act, they could not comply therewith in respect to the requirement of filing their claim within ninety days after the accident occurred. This is true, but they still had, on August 14, 1931, three and one-half months remaining before their cause of action would become barred by the statute of limitation applicable to it. (Sec. 340, Code of Civil Procedure.) They did not in fact commence their action thereon until December 31, 1931. During the intervening period they had ample opportunity to comply with the statute by filing their claim. No advantage could rightfully be claimed or gained by the city by reason of the fact that the claim was not filed within ninety days after the occurrence of the accident, because in this case that requirement of the new law could not attach. Nor were any rights of the plaintiffs impaired by this action of the legislature; nor can it be said that to enforce the provisions of the act would result in making it retroactive, for the act is remedial in

nature and the legislature has power to change rules of procedure or remedies, and such changes may be made applicable to pending actions or to causes of action not yet sued upon, provided that vested rights are not destroyed or obligations of contracts impaired. (*Thompson* v. *County of Los Angeles,* 140 Cal. App. 73 [35 Pac. (2d) 185].) In the case just cited this court held that failure to file a claim for damages resulting from an accident arising from a defective condition of a highway, which occurred two weeks before this act under consideration went into effect, was fatal to the action brought thereon.

"For the foregoing reason and upon the authorities cited we are constrained to hold that the failure of plaintiffs to file their claim prior to commencing their action herein bars them from recovery from the City of Pomona. These conclusions render it unnecessary to consider the question of liability of the city under the evidence."

The judgments are, and each is, affirmed.

THOMPSON, J., Dissenting.—I dissent.

The question concerning the liability of the defendant-appellant is very simple and may very properly be stated as follows: May it be considered guilty of negligence in maintaining an electric light pole inside the curb line of a street, and sixteen feet from the curb line of an intersecting street where the first-mentioned street is narrowed at the intersection? In other words, would the ordinarily reasonable man, guided by those considerations of care and prudence which ordinarily regulate the conduct of human affairs have felt compelled to locate the pole elsewhere, or would he have been content to locate it off and away from the highway resting upon the assurance that those who were to make use of the street would recognize the pavement and curb lines, as a natural barrier beyond which they should not stray? I am compelled to conclude that ordinary prudence would dictate only that the pole should be located off and away from that portion constructed for vehicular traffic, and that negligence may not be predicated upon any such location. I believe that the principle announced in *Waldorf* v. *City of Alhambra,* 6 Cal. App. (2d) 522 [45 Pac. (2d) 207], and supported by the authorities therein cited, is applicable in the present case and should be controlling. *Barrett* v. *Southern Pacific Co.,*

207 Cal. 154 [277 Pac. 481], is no comfort to plaintiff for the very patent reason that there the obstruction was maintained in the middle of the highway.

Rehearing denied. Thompson, J., voted for a rehearing.